# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1911

---

3147. YATESVILLE BANKING CO., for use, etc., *v.* FOURTH
NATIONAL BANK.

1. Where a drawee of a negotiable instrument pays it to a person holding
it through and under a forged indorsement of the payee's name, he may
(subject to certain limitations) recover from the person receiving the
money on the paper the sum so paid, either in an action in the nature
of an action for money had and received, or in an action upon the war-
ranty implied from the presentation of the instrument that the indorse-
ments thereon are genuine, or in an action upon an express warranty
that the indorsements are genuine, if such an express warranty has
been made.

2. If the person presenting and receiving payment on a negotiable instru-
ment bearing the forged indorsement of the payee is himself innocent
of the forgery, it is incumbent on the person who has so paid to give
to the person to whom the payment has been made notice of the forgery
within a reasonable time after discovering it. If he fails in this duty,
the person so paid may, when sued for reimbursement by the person
who has done the paying, set up, as a defense to the action, any loss
that has been occasioned to him by reason of the failure to give timely
and reasonable notice. However, as lack of notice, followed by loss, is
an affirmative defense, it is not necessary for the plaintiff to negative
it in his petition.

3. The person paying a negotiable instrument upon the express warranty
of the person presenting it that all prior indorsements are genuine (the
warranty being written on the instrument itself) may recover from his
warrantor, if it turns out that the indorsement of the payee is forged,
without showing that he has returned or tendered the instrument to him,
notwithstanding some of the signatures on it may be genuine, and the
instrument may not be worthless from a commercial standpoint. The

person who has thus paid out the money on the instrument bearing the forged indorsement and the warranty may hold it as evidence until reimbursement has been made or tendered.

4. "The mere fact that a plaintiff in his pleadings declares his intention of suing for the use of a third person does not raise any question as to the liability, either of the plaintiff or of the defendant, to such third person. The words declaring an intention to use the recovery for the benefit of another are, as to the defendant, harmless surplusage. He is not concerned in what disposition is to be made of the recovery."

DECIDED NOVEMBER 7, 1911.

Complaint; from city court of Atlanta—Judge Reid. December 10, 1910.

The Yatesville Banking Company brought suit against the Fourth National Bank, and laid two counts in the petition. The substance of these counts may be stated thus: In the first count it is alleged, that the plaintiff sues for the use of McNeice and certain other persons, whose names are set out, and that the defendant is liable to the plaintiff in the sum of $3,612, because, on July 7, 1907, the plaintiff issued a certain cashier's check for that sum of money, payable to North Penn Iron Company; that on or about July 10, 1907, the defendant notified the plaintiff that it (defendant) had paid this cashier's check, upon the order of the payee, and it was held as a demand against the plaintiff; that on receipt of this notification the plaintiff paid to the defendant the sum of money above named, and received from the defendant the cashier's check, when, as a matter of fact, the defendant had not paid, and never has paid, the amount of the check to the payee or his order, the indorsement of the name of the payee being a forgery; and the usees named "have jointly paid unto the petitioner the sum of three thousand six hundred twelve dollars ($3,-612) to indemnify petitioner for the sum aforesaid paid defendant;" that the plaintiff has demanded of defendant the sum sued for, and payment thereof has been refused.

In the second count it is alleged, that the plaintiff sues for the use of the same persons; that the check was issued, the indorsement of the payee forged, and payment of it with this forged indorsement was requested by the defendant; that the plaintiff paid to the defendant the amount of $3,612, receiving from the defendant therefor the original check, together with the defendant's guaranty in the following words: "Pay to the order of any bank or banker. Prior indorsement guaranteed. Fourth National

Bank of Atlanta, July 13, 1907. Chas. I. Ryan, Cashier;" that being induced by this guaranty and relying upon the same, the plaintiff paid the amount of the cashier's check to the defendant; that the guaranty has failed and the plaintiff has lost the sum of $3,612 thereby; that "the usees have jointly paid unto petitioner the three thousand six hundred twelve dollars to indemnify petitioner for said loss." A copy of the check is set forth as an exhibit, and it appears that in addition to the indorsement, "North Penn Iron Co.," there were two other indorsements prior to the indorsement of the Fourth National Bank—those of John A. Stewart and Stewart & Davis.

The defendant filed a general demurrer, which the court sustained; and to this judgment the plaintiff excepts.

*Scott & Davis,* for plaintiff.

*Rosser & Brandon,* for defendant.

POWELL, J. (After stating the foregoing facts.) The demurrer was general, but the defendant in error alleges the following grounds why it should have been sustained: (1) that it is not alleged that reasonable notice of the forgery was given to the plaintiff, and that reasonable demand for the return of the money was not made; (2) that the cashier's check turned over to the plaintiff was not returned or tendered to the defendant before the suit was brought; (3) that it appears that the money paid out by the Yatesville Banking Company was repaid by the usees named in the action, before this suit was brought, and that the voluntary payment by the usees furnishes no right of recovery for their use.

1. Certain propositions are undisputed: (1) that the cashier's check stands as if it were a negotiable promissory note of the bank by which it was issued; (2) that the issuing bank stands thereto in the dual relation of drawer and drawee. It is also conceded (3) that ordinarily the bank issuing the cashier's check, and having paid it upon forged indorsement, would not be held chargeable with any notice that the indorsement was a forgery, and that ordinarily it could recover, from one to whom it had paid the money on the faith of the forged indorsement, the amount which it had thus improperly paid out on the check. The case before us, therefore, narrows to a decision upon the special points already mentioned

2. As to the first point really in issue: The law is that, where a person has paid a negotiable paper to another on a forged indorsement, and the latter is innocent of the forgery, it is incumbent upon the person so paying to give notice of the forgery to the other person within a reasonable time after discovery of the fact; and he may lose his right of action for failure to give the notice, provided that his laches in this respect has subjected the other to loss. What is reasonable notice in such a case is generally a question for the jury.

After stating a somewhat contrary doctrine, asserted by some of the courts, Daniel, in his work on Negotiable Instruments (5th ed.), § 1372, says: "But there is high authority for the more liberal, and, we think, wiser and juster doctrine that the demand for restitution may be made within a reasonable time after the forgery is discovered, and that the mere space of time is not important, provided it be clearly shown that the holder will be put to no more liability, trouble, or expense by a restoration then than if it had been called for on the day of payment. Nor does the circumstance that there are genuine indorsers prior to the holder, but subsequent to the forged name, seem to us to alter the case. Their indorsement of the instrument being a warranty of its genuineness, they would not be entitled to notice, as it was not genuine in all respects; and, besides the right to sue them as indorsers, the holder, on being compelled to refund the money, could recover back the amount paid by him to his predecessor, and so on, until the instrument rested where the loss should fall."

We have no doubt that this states the correct doctrine. The defendant in such a case, having received from the plaintiff, to his use and benefit money to which he is not entitled, would primarily be subject to an action at law (generally to an action in the nature of an action for money had and received), to be brought at any time within the statute of limitations, but commercial usage, as well as a principle of natural justice, would require the person who had thus paid out the money not to remain quiescent when, by so doing, he would deprive the other person who, too, had been an innocent victim of the forgery of any reasonable means by which he might recoup his loss; and a failure to exercise reasonable diligence in giving this notice ought to and will deprive him of the right to maintain his action, if because of his failure in this re-

spect the loss does ensue. But two things (both failure to give the notice and loss on the part of the other person, occasioned thereby) should concur before this right of action, arising as it does ex æquo et bono, should be lost to the person who has been caused to pay the money improperly.

The duty to give the notice does not arise until the forgery has been discovered, and may be exercised then, or within a reasonable time thereafter. It does not appear from the petition in this case when the plaintiff discovered the forgery, nor when the demand for repayment was made upon the defendant, though it is alleged in general terms that it was demanded, or, as it is stated in one of the counts, was "formally" demanded. The petition would have been subject to special demurrer on the ground that this information was not given specifically, but the general demurrer raises no such question. Further, we are of the opinion that it is not necessary for the plaintiff in such a case to make it appear that his notice of the forgery and demand for repayment were given at such a time as that no loss to the defendant occurred from the failure, and that the petition would not be subject to general demurrer raising this question, unless the petition on its face affirmatively disclosed that loss had ensued. As Cowan, J., said, in Canal Bank v. Bank of Albany, 1 Hill (N. Y.), 291: "I am not willing to concede that delay in the abstract, as seems to be supposed, can deprive the party of his remedy to recover back money paid under the circumstances before us." It would be an affirmative defense, which the defendant might set up by way of avoidance of liability, to say that this notice came at such a time and with such lateness that he was subjected to a loss which would not have ensued if it had been given timely. Such a defense is in the nature of a plea of recoupment, in which the defendant sets off damages ensuing from the plaintiff's neglect, against the damages which he caused to the plaintiff by reason of his false presenting of the paper.

3. As to the second reason asserted for the sustaining of the demurrer—that the plaintiff brought suit without first offering to return the cashier's check: The defendant in error cites two cases (Coolidge v. Brigham, 1 Metc. [Mass.] 547, and Bassett v. Brown, 105 Mass. 551). The last case cited is hardly in point, except in so far as it lays down the general doctrine that restoration is a condition precedent to rescission for fraud. The Coolidge case is

a leading case (frequently cited, but often distinguished) in support of the proposition that, where one party receives from another a paper which, though it is in some of its features a forgery, nevertheless has legal validity as against some of the parties thereto, there must be a return of the paper before there can be a rescission of the transaction in which it is involved. The point in that case is that such a paper is not one of those wholly valueless articles which need not be returned as a condition precedent to rescission. In that case the plaintiff, having taken, in payment for a bill of goods, a draft bearing a forged indorsement, but also bearing a genuine indorsement, attempted, upon discovery that his title to the instrument was infected with forgery, to bring assumpsit for the goods without returning the forged paper to the defendant from whom he obtained it. The court held that he could not maintain the action in this form; that he had no right to maintain assumpsit for the goods without rescinding the other transaction; and that that transaction could not be rescinded without the return of the paper, since the paper had some commercial value, irrespective of the fact that one of the indorsements thereon was a forgery. But the court before concluding the opinion pointed out that the defendant, by virtue of the indorsement which he had put upon the paper, had warranted that the previous indorsements were genuine, and upon this view of the case the court held that the plaintiff might sue the defendant upon this warranty without returning the paper, and allowed him to amend his declaration and to proceed accordingly. To quote the language of the court itself: "The plaintiff was at liberty to restore the note to the defendant, or to retain it and resort to his action on the warranty . . A new trial, therefore, will be granted, with liberty for the plaintiff to amend his declaration by counting on the warranty; he paying the defendant his costs of the former trial and of the present term."

In the present case the suit was upon the warranty, not merely arising by implication, but expressly contracted for in the indorsement of the defendant upon which the plaintiff paid the money. This guaranty is essentially the cause of action set out in the second count, and, under the very authority of the chief case relied on by the defendant in error, the plaintiff had the right thus to sue without returning this paper. In the present case there is a

very plain reason why any other rule would be unjust, for upon this paper was the written evidence by which the plaintiff should support his cause of action; it was the written embodiment of the defendant's guaranty. If the defendant had offered to repay the money upon the surrender of this paper, it would have been the duty of the plaintiff to surrender it; but when the defendant refused to pay we know of no reason in law or in common sense why the plaintiff should be required to give up its evidence, even though by its retention of the paper it might deprive the defendant of that evidence which the defendant might need in order to recover from the previous indorsers. It must be kept in mind that if the defendant had discharged its obligation, under the circumstances, of repaying the money to the plaintiff, it would have been at once the duty of the plaintiff to put the defendant in possession of this evidence, which the defendant might need for its further protection.

4. As to the third objection—that it appears that the plaintiff has not suffered loss, because the persons named as usees have repaid to it the money which it paid out to the defendant: Counsel for the defendant cite a number of cases which all recognize the well-established rule that a person making a voluntary payment can not recover it; and these authorities would be more or less pertinent if these usees were suing the plaintiff and attempting to recover back the money, but just how it can affect the defendant's rights in this case we do not see. The allegation as to the acts of the usees and as to the fact that they had paid to the plaintiff an amount sufficient to indemnify it against loss is pure surplusage. The suit merely tests the right of the plaintiff to recover. The usees could·not sue upon the guaranty, as they were not parties to it. "The mere fact that a plaintiff in his pleadings declares his intention of suing for the use of a third person does not raise any question as to the liability, either of the plaintiff or of the defendant, to such third person. The words declaring an·intention to use the recovery for the benefit of another are, as to the defendant, harmless surplusage. He is not concerned in what disposition is to be made of the recovery." *Norcross Mfg. Co.* v. *Summerour,* 114 *Ga.* 156 (39 S. E. 870). Just what would have been the effect on the plaintiff's cause of action if these usees had unconditionally paid it the loss which the defendant's act had oc-

casioned, it is unnecessary for us to say; for it is not so asserted in the petition. It is merely alleged that these usees have paid over the amount of money represented by the check to the plaintiff bank to be held to indemnify it against loss. Why they paid it, or what connection they had with the transaction, is not disclosed. They may have been insurers; they may have been stockholders subjected to liability, or directors held for neglect in the matter, or what not; the record is silent, and we can not say. All we are called upon to say is that the petition does not disclose enough to show that they have deprived the plaintiff of its cause of action, so as to subject the petition to general demurrer.

In this connection, it is perhaps proper to notice, as a part of the general discussion of this question, that if the usees, from whatever motive, bought up the plaintiff's right of action and failed to secure such an assignment thereof as would be enforceable in a court of law, the proper method to bring suit would be for the present plaintiff to sue for the use of the usees, naming them; since their right of action in such a case could not otherwise be asserted in a court of law in this State. Under the practice here, where a transaction is such as to confer upon a party merely an equitable title to a chose in action, he can not sue thereon in his own name, but must sue in the name of the party in whom the right of action rests, and his own name may or may not be used as usee, accordingly as the plaintiff may elect.

After carefully considering the whole case, we have come to the conclusion that the general demurrer should not have been sustained. The defendant may have open to it one or more of the defenses which it has attempted to assert under the demurrer, but these should be set up by plea or answer, and demurrer is inadequate to raise them.

*Judgment reversed.*