8015.   DOWNING COMPANY v. PEARSON BANKING
                        COMPANY.

1. A drawee who has paid a draft to which forged bills of lading were attached has no recourse against a bank which had discounted the draft in the ordinary course of business and without knowledge of the fraud.
2. A bank, in cashing a draft, without notice or suspicion of wrong-doing, does not warrant to the acceptor bills of lading attached to the draft.
3. The indorsement by a bank of the words, "All prior indorsements guaranteed, pay any bank or banker, or order," entered upon a draft to which forged bills of lading are attached but which contains no reference to them, implies no guarantee of the genuineness of the bills of lading.

                     DECIDED JUNE 15, 1917.

Action for damages, etc.; from city court of Douglas—Judge Bryan.   November 20, 1916.

The petition of the Downing Company alleged that the Pearson Banking Company, a corporation, had injured and damaged plaintiff in the sum of $235, by reason of the following facts: that on May 3, 1909, a draft for $235, purporting to have been drawn by the Douglas Naval Stores Company, by E. F. Fisher, upon the petitioner as drawee, was cashed by the defendant bank and transferred to the defendant by Fisher; that attached to the draft were what purported to be two bills of lading issued by the Atlanta, Birmingham & Atlantic Railroad Company, one for thirty barrels of rosin, and the other for twenty casks of spirits of turpentine;

that the defendant bank indorsed the draft, and in due time it was presented to petitioner, and by petitioner paid; that the two bills of lading attached to the draft were forged and altered, and that petitioner paid the draft in ignorance of this fact; that there was nothing upon the bills of lading or the draft to indicate or suggest the forgery or to put petitioner upon notice thereof, but, on the contrary, they appeared on their face to be regular, and the supposed fact of regularity was completely evidenced to petitioner by the fact that the defendant, a reputable banking company, had duly indorsed the draft to which the bills were attached; that petitioner, after payment of the draft, waited a reasonable length of time for delivery to it of the naval stores specified in the bills of lading, and promptly, on June 1, 1910, on learning that the bills of lading were forgeries, notified the defendant of the forgery and demanded the return of the money paid on the draft; that petitioner paid the draft without consideration, and that, by reason of the negligence of the defendant bank, it was misled into believing that the bills of lading were genuine. The petition further alleged that the defendant bank was negligent in failing to require identification of the person presenting the draft, and in failing to use any diligence in endeavoring to ascertain whether there was such a concern as the Douglas Naval Stores Company, and whether Fisher had authority to draw the draft in the name of the said concern; that reasonable diligence on the part of the defendant bank would have disclosed the fraud in the purported bills of lading and in the draft, and would have shown that Fisher had no right to sign the draft in the name of the Douglas Naval Stores Company, that there was no such concern as the Douglas Naval Stores Company at that time in Coffee county, Georgia, and that the bills of lading were forgeries. The tenth paragraph of the petition is as follows: "Petitioner relied wholly upon the bills of lading attached to said draft for the value of said draft, and said draft would not have been paid at all except for said bills of lading attached." The suit is for the recovery of money paid under mistake of fact as to the genuineness of the bills of lading, for recovery of money improperly had and received by the defendant bank, and for negligence on the part of the bank in receiving, discounting, and sending forward under its indorsement the draft to which the forged bills of lading were attached.

The petition was held bad, on general demurrer, and the Downing Company excepted.

*Dickerson, Kelley & Roberts, Bennet, Twitty & Reese,* for plaintiff. *J. W. Quincey, B. T. Allen,* for defendant.

GEORGE, J. (After stating the foregoing facts.) The question for determination in this case would be without difficulty except for the inferential allegation in the petition, that Fisher was wanting in authority to draw the draft in the name of the Douglas Naval Stores Company. The petition does not aver that the party actually drawing the draft was other than E. F. Fisher, nor does it distinctly and unequivocally allege that Fisher did not have authority to draw the draft in the name of Douglas Naval Stores Company. Construing the petition most strongly against the plaintiff in error, the charge is that the Douglas Naval Stores Company was not a going concern in Coffee county at the time of the drawing of the draft. The petition alleges that the Douglas Naval Stores Company had been, prior to the date of the draft, engaged in business in Coffee county. It is not averred that the bank knew that the naval stores company had discontinued its business. We think it fair to conclude that the petition does not set forth a cause of action, or claim any damages for failure of authority in E. F. Fisher to draw the draft in the name of the Douglas Naval Stores Company. Indeed, the whole action is one of negligence, and proceeds upon the theory that the bills of lading were forgeries, and that the bank was negligent in failing to discover this fact before accepting and cashing the draft and causing it to be presented to the plaintiff. We have reached this conclusion because the plaintiff did not see fit to aver distinctly that Fisher acted without authority in drawing the draft in the name of the Naval Stores Company, and because it is not alleged that the plaintiff lost anything by reason of the fact that the Douglas Naval Stores Company was not bound by the act of Fisher in executing the draft. Indeed, the draft itself was genuine. Whether it was signed in the real name of the drawer is immaterial. It was signed by Fisher, in such name as he elected to use, and that fact sufficed to establish his legal relations to it and to the parties with whom he dealt. Conceding the petition to charge that the draft was in fact drawn by Fisher, and that he was bound thereby, and that the Douglas Naval Stores Company, whether a

mere trade name used by Fisher, a copartnership, or a corporation, was also bound thereby, we come to a consideration of the real facts set out in the petition.

Does a bank, in discounting a draft, without notice or knowledge of wrong-doing on the part of the drawer, warrant to the acceptor or drawee bills of lading attached thereto as security? In our opinion it does not. The business of banking could not be carried on safely, or at all, if banking institutions were held to be liable for frauds and forgeries with respect to collateral documents and transactions of which they are ignorant, or if their failure to inquire into and ascertain the genuineness and good faith of such matters were held to be actionable negligence. The negligence was on the part of the plaintiff. It was not bound either to accept or to pay the draft, and if it did accept or pay the draft, before the delivery of the naval stores described in the bills of lading, it did so at its own risk. As drawee it can not recover the money paid out by it upon the draft, as being without consideration, or as being money improperly had and received by the bank, or as money lost to it by reason of actionable negligence on the part of the bank in merely receiving and cashing a draft and sending it forward for collection. It is to be noted that the draft did not refer in any manner to the bills of lading attached thereto. The bank did not indorse the bills of lading. The bank merely indorsed the draft and in express language limited its liability to a guaranty that all prior indorsements were genuine. The general rule is that a drawee who has paid drafts to which bills of lading or other collateral instruments were attached has no recourse against a bank which had discounted the drafts in the ordinary course of business and without knowledge of the fraud, and the petition in this case does not allege knowledge on the part of the bank of fraud in the execution of the draft or of fraud in the attached collateral, nor does it allege any single fact within the knowledge of the bank from which such knowledge could legitimately be inferred. See 2 Michie on Banks and Banking, § 186, p. 1603; 3 Ruling Case Law, 616, § 244; Hoffman v. National City Bank, 79 U. S. (12 Wall.) 180-193 (20 L. ed. 366); Goetz v. Bank of Kansas, 119 U. S. 551-561 (7 Sup. Ct. 318, 30 L. ed. 515); Nebraska Hay & Grain Co. v. First National Bank, 78 Neb. 334 (110 N. W. 1019, 9 L. R. A. (N. S.) 251, 126 Am. St. R. 602). Noth-

ing in this case is in conflict with the principle announced in *Woods* v. *Colony Bank,* 114 *Ga.* 683 (40 S. E. 720, 56 L. R. A. 929), and *Yatesville Banking Co.* v. *Fourth National Bank,* 10 *Ga. App.* 1 (72 S. E. 528). The court did not err in sustaining the demurrer.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*