Isaac Bernheimer, Appellant, *against* Marshall & Co. Respondents.

It is a rule well settled, that money paid under a mistake of facts, may be recovered back. But an exception to the rule, equally well settled, is, that money paid by the drawee of a draft which has been forged, cannot be recovered back, for the reason that the drawee is supposed to know his correspondent's signature.

Upon payment of a forged draft, the drawee and holder both being chargeable with negligence, and both acting in good faith, the loss must fall upon the drawee. If the loss can be traced to the fault or negligence of either party, it should be fixed on him, and where no fault or negligence is imputable, the loss is suffered to remain where the course of business has placed it.

The statement of the holder in presenting a draft to the drawee for payment, that he has a draft of a certain person means only that he holds a draft purporting to be signed by such person, and cannot be construed into a warranty of the genuineness of the signature. The holder looks to the drawee for information on this point, and if he accepts or pays it, he is presumed to acknowledge the signature as genuine.

A defective complaint, or one which does not contain facts sufficient to constitute a cause of action cannot be cured by the necessary averments in the reply. The complaint must contain all the allegations necessary for the Plaintiff to maintain his action.

This was an appeal from a judgment of the District Court of Ramsey County. The facts stated in the complaint are briefly stated in the opinion of the Court. Issue was joined upon a portion of these allegations, but upon the trial of the cause, the Defendants below moved to dismiss the cause, because the complaint did not contain facts sufficient to constitute a cause of action. The motion was sustained and judgment rendered against the Plaintiff for the costs of the action. From which judgment the appeal is taken.

The following were the points and authorities of the Appellant's Counsel:

*First.* The complaint exhibits a statement of facts and cir-

cumstances showing that the sum of money paid by the Plaintiff, and sought to be recovered back in this action, was paid by mistake and in ignorance of facts.

*Second.* That the general rule allowing money so paid to be recovered back, applies to this case, and that the Plaintiff was not within the exception which obliges the party paying a draft, to know the handwriting of his correspondents.

1. In that the Plaintiff paid the draft without seeing the signature.

2. In that the Plaintiff paid his money to be applied only to a genuine draft.

3. In that the Defendants were most in fault in causing said draft to be paid.

4. In that the facts and circumstances of the case were such as made it incumbent on the Defendants to make inquiry as to the genuineness of the draft, and they were affected with constructive notice of the fraud.

5. In that the question of the bona fides of the Defendants as holders of the forged draft is in issue.

*Third.* That it was erroneous to order judgment for the Defendants when there were issues of fact for a jury, which were material.

*Fourth.* That the case should have been tried by a jury.

*Fifth.* That the Defendants were not entitled to judgment upon the face of the pleadings.

*Story on Bills,* 197; 2 *Burrows Rep.* 1012; 3 *Burrows,* 1354; *Doug. Rep.* 471; *Chitty on Cont.,* 626; *Wilkinson vs. Johnson.* 3 *Barn. & Cres., p.* 428; *Goddard vs. Merch't Bank,* 4 *Comst. R.* 147; 2 *Sanford's R.* 247; 2 *Greenl. Ev., Sec.* 172; *Meneve vs. Cooper,* 5 *Pick R.,* 412; *Vallett vs. Parker,* 6 *Wend.,* 615; *Catlin vs. Hanson,* 1 *Duer,* 322; *Harvey vs. Powers,* 4 *Eng. L. Scy. R.* 531; *Carral Bank vs. Bank of Albany,* 1 *Hill,* 287; 1 *Stephens N. R.* 346, 349.

The gist of this matter is whether a party is permitted to pay a sight draft without seeing it, or whether such payment *implies* such negligence that the Plaintiff cannot recover.

The following are the points and authorities of counsel for Respondents:

*First.* The complaint contains no cause of action against the Defendants.

It was incumbent upon the Plaintiff to be satisfied that the bill drawn on him was the drawer's hand before he paid it; but it was not incumbent upon the Defendant to inquire into it. *Price vs. Neal,* 3 *Burr Rep.,* 1355; *U. S. Bank vs. Bank of Georgia,* 10 *Wheaton,* 333; *Bayles on Bills, p.* 267; *Goddard vs. Mercht's Bank,* 4 *Comst.,* 147; *Bank of Com. vs. Union Bank,* 3 *Comst.* 230; *Story on Bills, Sec.* 113, 411, 451, 452; *Gloucester Bank vs. Salem Bank,* 17 *Mass.* 33; *Markle vs. Hatfield,* 2 *John. R.* 462, (*last paragraph of Opinion of Chief J. Kent.*) *Young vs. Adams,* 6 *Mass.* 187, (*Sewal's Justice.*) *Smith's Mercantile Law, p.* 315.

*Second.* The complaint being insufficient for want of facts to constitute a cause of action, no statements or allegations of the answer or reply, can save the action. *Rev. Stat., p.* 337, *Sec.* 60 *& 66, and p.* 340, *Sec.* 84 *& 85;* *Amendments to Rev. Stat. p.* 9, *Sec.* 26; *White vs. Joy,* 3 *Kernan, p.* 83.

*Third.* There are no facts in the answer or reply which can cure the defects in the complaint, nor is any allegation of the answer put in issue by the reply.

In Gloucester Bank *vs.* Salem Bank, 17 *Mass.* 41, a case in principle like the one at bar, Parker, J., in delivering the opinion of the Court, says, that " the just and sound principle of decision has been, that if the loss can be traced to the fault or negligence of either party, it shall be fixed on him. Generally where no fault or negligence is imputable, the loss has been suffered to remain where the course of business has placed it. "

HOLLINSHEAD & BECKER, & H. J. HORN, Counsel for Appellant.

BRISBIN & BIGELOW, Counsel for Respondent.

*By the Court.*—I. ATWATER, J. This is an action brought to recover an amount of twenty-seven hundred and fifty dollars, paid by Bernheimer to Marshall & Co., upon a forged draft, which purported to have been drawn at St. Paul by one C. Meyer, to the order of E. Howitz & Co., and directed to Isaac

Bernheimer, of New York. The draft was negotiated by Marshall & Co. in the ordinary course of business. The draft was sent by Marshall & Co. to C. H. Rogers & Co., their correspondents and agents in New York, who, on the 5th of September, 1855, about 2 o'clock P. M., presented the same for payment at the place of business of Bernheimer. The person presenting the draft was informed by the clerk of Bernheimer, that he (Bernheimer,) was then absent from the office, and that he might wait until his return, or that a check for the amount of the draft would be sent to C. H. Rogers & Co. as soon as Bernheimer should return, if the same was correct, but payment of the draft was refused before his return. The draft was then taken back to C. H. Rogers & Co., by their clerk, the clerk of Bernheimer, however, having drawn a check for him to sign for the amount of the draft, upon his return.

Upon his return soon after, Bernheimer was informed of the presentation of the draft, who thereupon, signed the check drawn for that purpose, and sent the same by his book-keeper to C. H. Rogers & Co., who received it, (and afterward drew the money upon it,) and gave the draft to the book-keeper, who deposited the same among the papers of Bernheimer, who, it appears, did not see the draft at the time, nor until several days after, when he was informed of the forgery of the name of the drawer, C. Meyer. He then demanded of Marshall & Co. a return of the money, and upon refusal by them, brought suit to recover the amount.

The rule is too well settled to need any discussion; that money paid under a mistake of fact may be recovered back. The exception to the rule is equally well established, that money paid by the drawee, of a draft which has been forged, cannot be recovered back, for the reason that the drawee is supposed to know his correspondent's signature.

Whether the Appellant comes within the exception in this case is the question upon which the action hinges.

Although the rule and exception thereto, as above stated, was early settled, there seems to have been some difficulty in the application of the principles governing each, to particular cases, and somewhat conflicting authorities may be found in the books, upon the subject. A leading case in which it

was held, that the drawee or acceptor of a forged draft, cannot recover back money paid on the same, is that of *Price vs. Neal.* 3 *Burr. Rep.* 1355. That was an action by the drawee and acceptor of forged drafts to recover back the amount paid on the same. The Plaintiff in that case had taken up one of the drafts without having seen it, having sent his servant with the money, who paid the amount of the draft and took it up, the other was paid after acceptance by the Plaintiff.

Lord Mansfield in giving the opinion of the Court, says, that the Plaintiff in such an action cannot recover, unless it be against conscience in the Defendant to retain it, and that it was incumbent upon the Plaintiff to be satisfied, that the bill drawn upon him " was the drawer's hand," before he accepted or paid it. Substantially the same doctrine was held in *Jenys vs. Fowler*, a still earlier case reported in *S. C. Str.* 946. The principle has been steadily adhered to by the Courts, until recently, when there would seem to have been a departure from it, in the State of New York at least, in the case of *Goddard vs. Merchant's Bank*, 2 *Sand. R.* 247. Great stress is laid upon that case by the counsel for the Appellant, and indeed it may be admitted, that if this Court hold the ruling in that case correct as given in the 4 *Coms. R.* 147, the Appellant here must recover, as the case there reported seems to be entirely analagous to the one at bar. But with the highest deference to the opinion of that Court, we think its ruling in that case, cannot be sustained upon principle, nor by the authorities in analagous cases. It will be observed that the Court was not unanimous in its view of that case, and the opinion delivered by one of the two (Ruggles and Jennett,) eminent jurists who dissented, is entitled to great weight, and seems better sustained by reason, and the current of authority. The Court seems to have decided the case solely on the ground that the Plaintiff had paid the bill without having seen it, and took it on the representation of the party from whom they received it, that it was a draft of a Bank which was their correspondent. And Bronson, J., remarks in giving the opinion of the Court, that " they had had no opportunity of judging, whether the bill was in the hand writing of their correspondents, the drawers, or not, and consequently the argument which concludes the drawee

when he pays, after sight of the bill proves nothing against the Plaintiff." And the same argument is urged upon this Court with much strenuousness, as the reason why the Plaintiff should be permitted to recover in the case at bar.

But the premises assumed appear to be unsound, and the conclusions drawn from them cannot therefore be sustained.

It is not true in the case above cited and more especially in the one under consideration, that the Plaintiff had no opportunity to see the draft. He had ample opportunity to see it, but chose not to avail himself of it. The draft was duly presented at the place of business of Bernhiemer, but he was absent. There was no one in charge authorized to pay the draft. Upon his return he was informed of the presentation of the draft, and that it had been taken back to the house of C. H. Rogers & Co. Instead of going in person to examine the draft, he chose to send his book keeper with a check to pay it, without any examination. There was no attempt at concealment on the part of the Defendants, nor any actual withholding the draft from the inspection of the Plaintiff as in the case of *Goddard vs. The Merchant's Bank.*

The Plaintiff in fact, never asked to see the draft, but of his own accord paid it without sight. If negligence is chargeable to either party, it is clearly with the plaintiff in paying the draft under such circumstances.

But if in this respect the parties stand on an equal footing, then the loss must fall upon him who has paid the money rather than upon him who has received it, both parties acting in good faith. In the *Gloucester Bank vs. Salem Bank*, 17 *Mass. p.* 41, a case in principle like the one at bar, Parker J. in delivering the opinion of the Court, says "the just and sound principle of decision has been, that if the loss can be traced to the fault or negligence of either party it should be fixed on him. Generally where no fault or negligence is imputable, the loss has been suffered to remain where the course of business has placed it."

It is claimed on the part of the Plaintiff, that he was induced to pay the draft on the representation of the Agents of the Defendant, that they held the draft of C. Meyer the correspondent of the Plaintiff, that is, a genuine draft of his. It does not appear that any other representation was made in regard to the

draft by the agents of Defendants, than is usual in the ordinary course of business in such cases. Every man in presenting a draft for payment, says in substance, either expressly or by implication, "here is the draft of A. B. which I wish you to pay." Such a statement in the ordinary course of business, would not be understood as a warrantee of the genuineness of the draft, nor we apprehend will it be contended, that if the drawee in person paid the draft on such statement could he recover back the money, in case it should be afterward discovered that the draft was forged. The holder has not the means of knowing whether the draft is genuine, and looks to the drawee for information on that point, and his statement that he has such and such a draft, can only mean that he has a draft signed with such a name. And if in the case above supposed, the drawee paying in person a forged draft, cannot recover back the amount, it must be on the principle, that he is bound to know the drawers signature and not the holders, and that the statement of the holder that he has such a draft is not a representation that the draft is genuine.

To hold otherwise would be productive of the most mischievous consequences. If the drawee is allowed to recover on payment of a forged draft because he has not seen it, he would probably never care to see a draft before payment, but even when presented at his counter, and he present, would direct his Clerk to pay it, and afterwards take advantage of his own laches to enforce a recovery. To admit this, would be to overthrow the long settled principles of law, and require the holder instead of the drawee, to guarantee the signature of the drawer, which manifestly would be most unjust and inequitable, and destructive of commercial business. The rule as laid down by Justice Bailey in *Milnes vs. Duncan*, 6 *B. & C.* 671 is undoubtedly correct, that "if a party pay money under a mistake of the real facts, and no *laches* are imputable to him (in respect of his omitting to avail himself of the means of knowledge within his power) he may recover back such money." In that case it was held, that the party had no adequate means of knowing that the bill was not a void bill, and therefore was permitted to recover. But in the case at bar, it certainly cannot be claimed that the party had not "the means of knowledge" in reference

to the draft within his power, had he chosen to avail himself of them, nor that he has not been guilty of *laches* in neglecting to examine the draft before payment.

Whether therefore we view the question in the light of the superior negligence of the Plaintiff, or on the principle laid down in *Price vs. Neal,* that it is not against conscience for the Defendant to retain the money, we are equally satisfied that the Plaintiff ought not to recover.

But there are certain allegations in the reply, tending to show that the Defendant did not negotiate this draft in entire good faith, or at least, that they were guilty of negligence in not informing themselves in regard to the genuineness of the draft, before advancing the money upon it, and his counsel insists that an issue of fact was formed which should have been submitted to a jury.

Whether these allegations, had they been made in the complaint and controverted by the answer, would have formed an issue of fact, it is not necessary to determine. We are satisfied they cannot avail in a reply, and are improperly found there. They are not "new matter constituting a defense to the counter claim or other new matter in the answer," and cannot be admitted under *Sec.* 71, *page* 338 *of Revised Statutes, P.* 9, of amendments. A defective complaint, or one which does not contain facts sufficient to constitute a cause of action, cannot be cured by the necessary averments in the reply. The complaint must contain all the allegations necessary for the Plaintiff to maintain his action. *Rev. Stat., P.* 337, *Sec.* 60, *P.* 340, *Sec.* 84 *& 85; Gould's Plead., P.* 172, *Sec.* 7, 11 *& 12; Chitty's Plead., Vol.* 1, *P.* 255, *and cases cited.*

In the view we have taken of the case, the complaint contains no cause of action, and the defect cannot be cured by the reply.

Judgment of the Court below affirmed.

The Chief Justice being of counsel in this cause, took no part in the decision.