AMERICAN SURETY CO. OF NEW YORK *v.* INDUSTRIAL
SAVINGS BANK.

1. BANKS AND BANKING—CHECKS—HOLDER IN DUE COURSE.

A bank is not the holder in due course of a check, where
the proceeds, paid to it by the bank on which it was
drawn, were credited to the account of the payee, one of
its depositors, unless said credit is used or at least drawn
down below the face of the check, and then only to the
amount paid.

2. SAME—FORGED CHECK—RIGHT OF BANK TO RECOVER FROM
PAYEE.

A bank which cashed a forged check drawn on it in the
name of one of its depositors is entitled to recover from
the bank to which the money was paid through the clear-
ing house, where the latter bank was not a holder in due
course, but merely placed the proceeds to the credit of
the payee, one of its customers, in the absence of a showing
that the customer's account was since reduced below the
amount of the check.

Error to Genesee; Parker (James S.), J.   Sub-
mitted April 5, 1928.   (Docket No. 39.)   Decided
June 4, 1928.

Assumpsit by the American Surety Company of New
York against the Industrial Savings Bank for the
amount of a forged check.   Judgment for plaintiff.
Defendant brings error.   Affirmed.

*Roy E. Brownell* and *Ralph E. Gault,* for appellant.

*George W. Cook,* for appellee.

FELLOWS, J.   The Industrial Construction Company
carried its account at defendant bank in Flint.   Walter
A. Windiate carried his account at the Union Trust

---

[1] Banks and Banking, 7 C. J. § 417; 10 L. R. A. (N. S.) 49;
25 L. R. A. (N. S.) 1308; L. R. A. 1915A, 77; 12 A. L. R. 1114;
5 R. C. L. 552, 553; 1 R. C. L. Supp. 1432; 4 R. C. L. Supp. 335;
5 R. C. L. Supp. 291.

& Savings Bank of same place.    On February 8, 1926, a check on the Union Trust & Savings Bank purporting to be signed by Windiate for $1,168.75, bearing date the 5th of February, payable to the Industrial Construction Company, was deposited in defendant bank with two other checks to the credit of the construction company.    It is admitted it was a forgery; the total amount of the three checks was $2,899.75.    On the same date a check for $1,200, purporting to be signed by the construction company and payable to the Flint Malleable Casting Company and purporting to be indorsed by the latter company, drawn on defendant bank, was cashed at the First National Bank of Flint. It likewise was a forgery.    It was paid through the clearing house February 8th.    The Windiate check went through the clearing house February 9th.    In neither instance did the bank upon whom it was drawn discover the forging of its customer's name until the 10th.    Upon learning of the forgery the Union Trust & Savings Bank promptly demanded of defendant payment of the money paid by it on the Windiate check. The demand was refused.    Plaintiff surety company, insurer of the Union Trust & Savings Bank against forgeries, paid the amount, and took an assignment of the claim against defendant and brought this action.

There is no dispute about the facts; they were stipulated in the trial court.    It is doubtless true, as pointed out by defendant's counsel, that both banks here involved were somewhat negligent in not discovering the forgeries of their customer's signatures.    Defendant passed the check held by the First National Bank as genuine and paid it, and the Union Trust & Savings Bank passed the check held by defendant as genuine and paid it.    And it is quite true, as pointed out by counsel, that defendant has paid to the First National Bank $1,200 on a forged check, and has been

paid $1,165.75 on another forged check, the one here involved, and has therefore suffered a loss.    But, except as the question of negligence bears on plaintiff's right to recover, we fail to perceive the importance here of the transaction between the defendant and the First National Bank.    There was, in a colloquy on the trial, reference made to other forgeries, but the detail of them does not appear in the record.    So far as the record discloses to a certainty, there was deposited in the defendant bank on February 8th to the credit of Industrial Construction Company $2,899.75, of which $1,168.75, was the forged check here involved drawn on the Union Trust & Savings Bank, which sum that bank paid to defendant bank the following day, and that on the day of the deposit defendant bank paid to the First National Bank $1,200 on another forged check, and, we may assume, charged that amount to the account of the Industrial Construction Company.

The question before us is whether we have on this record a case justifying the recovery by bank A from bank B of the money paid by A to B on the check of its own customer, which check is admittedly a forgery. Textwriters and courts considering the question here involved hark back to *Price* v. *Neal,* 3 Burr. 1355, decided by Lord Mansfield in 1762.    The case involved the duty of the drawee of a draft to know the drawer's signature and the right of the drawee to recover the amount paid by him on a forged instrument.    Lord Mansfield said:

"It is an action upon the case, for money had and received to the plaintiff's use.    In which action, the plaintiff can not recover the money, unless it be against conscience in the defendant, to retain it; and great liberality is always allowed, in this sort of action.

."But it can never be thought unconscientious in the defendant, to retain this money, when he has once received it upon a bill of exchange indorsed to him for a fair and valuable consideration, which he had *bona*

*fide* paid, without the least privity or suspicion of any forgery.

"Here was no fraud: no wrong.    It was incumbent upon the plaintiff, to be satisfied 'that the bill drawn upon him was the drawer's hand,' before he accepted or paid it; but it was not incumbent upon the defendant, to inquire into it."

An examination of the case will disclose that it possessed three elements:    (1) The duty of the drawee to know the signature of the drawer—as applied to modern banking, the duty of the bank to know the signature of its customer; (2) the *bona fides* of the holder; and (3) the laches of the payee before making any claim.    We note that these three elements are present in the case as an examination of later cases shows a disposition of the courts to pick out one of these elements, such as may suit their fancy, as the controlling grounds of decision.    The rule announced in this case received early approval in this country, and in 1825 Mr. Justice Story, writing for the court in *United States Bank* v. *Bank of Georgia,* 10 Wheat. (U. S.) 333, 354, said:

"After some research, we have not been able to find a single case, in which the general doctrine, thus asserted, has been shaken, or even doubted; and the diligence of the counsel for the defendants on the present occasion, has not been more successful than our own.    Considering, then, as we do, that the doctrine is well established, that the acceptor is bound to know the handwriting of the drawer, and cannot defend himself from payment by a subsequent discovery of the forgery, we are of opinion, that the present case falls directly within the same principle."

An examination of the American cases is satisfying that the great majority of the American courts have in the final analysis followed the doctrine of *Price* v. *Neal,* at least where all the elements of that case are present.    Among the cases, see *Bank of St. Albans* v. *Farmers & Mechanics Bank,* 10 Vt. 141 (33 Am. Dec.

188) ; *First National Bank* v. *Bank of Cottage Grove,*
59 Or. 388 (117 Pac. 293) ; *State Bank* v. *Trust Co.,*
168 N. C. 605 (85 S. E. 5, L. R. A. 1915D, 1138) ;
*Deposit Bank of Georgetown* v. *Fayette National Bank,*
90 Ky. 10 (13 S. W. 339, 7 L. R. A. 849) ; *Bernheimer*
v. *Marshall & Co.,* 2 Minn. 78 (72 Am. Dec. 79) ;
*United States* v. *Bank of New York,* 219 Fed. 648 (L.
R. A. 1915D, 797) ; *Trust Co.* v. *Hamilton Bank,* 127
N. Y. App. Div. 515 (112 N. Y. Supp. 84) ; *Levy* v.
*Bank of United States,* 4 Dall. (U. S.) 234; *Missouri
Lincoln Trust Co.* v. *Third Nat. Bank,* 154 Mo. App.
89 (133 S. W. 357) ; *Commercial & Farmers National
Bank* v. *First National Bank,* 30 Md. 11 (96 Am. Dec.
554).

However, some of the textwriters and a few of the
courts apparently grew restive under its application
in full force.   It was argued that as a general proposi-
tion money paid under a mutual mistake could be re-
covered back; that money paid on a forged draft or
check was paid under the mutual mistake that it was
a valid draft or check, and that it should be recover-
able in an action for money had and received, and it
was thought the rule should no longer be recognized
as controlling.   See 2 Parsons on Notes and Bills, 80,
81; 2 Morse on Banks and Banking (5th Ed.), § 464;
2 Daniels on Negotiable Instruments (6th Ed.), §
1655*a*; 5 Am. & Eng. Enc. Law (2d Ed.), p. 1072;
*First National Bank of Lisbon* v. *Bank of Wyndmere,*
15 N. D. 299 (108 N. W. 546, 10 L. R. A. [N. S.]
49, 125 Am. St. Rep. 588) ; *People's Bank* v. *Franklin
Bank,* 88 Tenn. 299 (12 S. W. 716, 6 L. R. A. 724, 17
Am. St. Rep. 884), (practically overruled in *Farmers'
& Merchants' Bank* v. *Bank of Rutherford,* 115 Tenn.
64 [88 S. W. 939, 112 Am. St. Rep. 817] ; *First National
Bank of Orleans* v. *State Bank of Alma,* 22 Neb. 769
[36 N. W. 289, 3 Am. St. Rep. 294] ; *Ellis & Morton*
v. *Ohio Life Ins. & Trust Co.,* 4 Ohio St. 628 [64 Am.

Dec. 610], (materially modified in *First National Bank of Belmont* v. *First National Bank of Barnesville,* 58 Ohio St. 207 [50 N. E. 723, 41 L. R. A. 584, 65 Am. St. Rep. 748] ; *McKleroy & Bradford* v. *Southern Bank of Kentucky,* 14 La. Ann. 458 [74 Am. Dec. 438] ). The Massachusetts court did not go quite so far as some of the courts (*Danvers Bank* v. *Salem Bank,* 151 Mass. 280 [24 N. E. 44, 21 Am. St. Rep. 450] ), and it recognizes the general application of the rule that the bank was bound to know the signature of its customer. *Dedham National Bank* v. *Everett National Bank,* 177 Mass. 392 (59 N. E. 62, 83 Am. St. Rep. 286).

Other courts, while recognizing the rule that the bank should know the signature of its customer, reach the conclusion that it is not a hard and fast rule, precluding a bank under any and all circumstances from maintaining an action to recover money paid on the forged check of its customer, and the conclusion has been reached that recovery could be had on the particular record before the court, for instance, where there was laches in asserting the claim, where the payee had not changed his position, where the payee had been negligent in failing to require proper identification before cashing the check, where his negligence contributed to the fraud, where reliance was had on the method of the clearing house, where the drawee bank had been lulled into security by acts of the payee bank, and other grounds which have been held sufficient to stay the operation of the rule to its fullest extent. See *Canadian Bank of Commerce* v. *Bingham,* 30 Wash. 484 (71 Pac. 43, 60 L. R. A. 955) ; *Gloucester Bank* v. *Salem Bank,* 17 Mass. 33; *American Express Co.* v. *State National Bank,* 27 Okla. 824 (113 Pac. 711) ; *Woods* v. *Colony Bank,* 114 Ga. 683 (40 S. E. 720, 56 L. R. A. 929) ; *Continental National Bank* v. *Metropolitan Nat. Bank,* 107 Ill. App. 455; *Bank of Williamson* v. *McDowell County Bank,* 66 W. Va. 545 (66 S. E. 761, 36 L. R. A. [N. S.] 605).

While textwriters and courts have not all agreed upon the general proposition as to the right to recover the money paid by a bank on a forged check of its customer, there is substantial agreement that such recovery may be had where the payee is not a holder in due course, not a holder for value and in good faith. 5 R. C. L. p. 552, thus states the rule:

"A bank is bound to know the signatures of those who deposit with it and draw checks against such deposits; and if it accepts or pays, in the usual course of business, a check whereon the signature of the drawer is a forgery, it will be estopped afterward to deny the genuineness of such signature.   This is the general rule under the negotiable instruments law as well as under the law merchant.   So if a bank, in the ordinary course of its business, pays a check purporting to be signed by one of its depositors to one who, finding it in circulation or receiving it from the payee by indorsement, took it in good faith for value, the money cannot be recovered back on the discovery that the check is a forgery.   It is equally well settled that the bank may recover such payment when made to one who is not a *bona fide* holder of the forged check."

In 7 C. J. p. 688, it is said:

"A bank which has paid a forged check cannot recover the money from the person who received it, where the latter was a *bona fide* holder having no connection with, knowledge of, or reason to suspect, the forgery, unless it can be made to appear that such person will be in no way prejudiced by being compelled to make repayment to the bank.   But repayment may be compelled where the person who received the money was not a holder for value, or his negligence or fault has contributed to the success of the fraud, or has misled the bank."

The editorial writer in a note, Ann. Cas. 1912D, 495, with citation of abundant authority, says:

"It is a settled rule of law that where a bank by mistake pays to a *bona fide* holder a forged check pur-

porting to be drawn by one of its depositors, it cannot recover from the innocent holder the amount so paid, the latter not being bound to determine at his peril that the drawer's signature is not a forgery (citing cases). It is equally well settled that the bank may recover such payment when made to one who is not a *bona fide* holder of the forged check (citing cases)."

In addition to the authorities already cited see *Title Guarantee & Trust Co.* v. *Haven,* 196 N. Y. 487 (89 N. E. 1082, 1085, 25 L. R. A. [N. S.] 1308, 17 Ann. Cas. 1131) ; *First State Bank* v. *First National Bank,* 314 Ill. 269 (145 N. E. 382) ; *Germania Bank of Minneapolis* v. *Boutell,* 60 Minn. 189 (62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519).

Was defendant bank the holder of this check in due course? Had it parted with value? Was it under our decisions a *bona fide* purchaser? The bank did not buy and pay the cash for this check. As has been stated, on February 8th the account of the construction company was credited by defendant bank with the amount of the three checks deposited, $2,899.75. On the same day defendant cashed a forged check on this account for $1,200, leaving a balance of $1,699.75, credit for that day's transaction. The check in question was for $1,168.75, much less than the credit. It was paid to defendant bank the next day by plaintiff's assignor. It will be thus seen that what defendant bank did was to credit its customer's account instead of paying cash. There is nothing in the record showing or tending to show that the account of the construction company was ever reduced below the amount of the check. It is well recognized in this jurisdiction that this does not render the bank a holder in due course unless the credit is used or at least drawn down below the face of the paper and if not entirely used, then only to the amount paid. In *Title Guarantee &*

*Trust Co.* v. *McGrath*, 239 Mich. 404, Chief Justice Sharpe thus stated the rule:

"If plaintiff discounted the note and credited the Lynch Construction Company's account with the proceeds, it was necessary, in view of the defense, for plaintiff to show that the Lynch Construction Company had exhausted that credit at the maturity of the note."

See, also, *Drovers' National Bank* v. *Blue*, 110 Mich. 31 (64 Am. St. Rep. 327) ; *Central Savings Bank* v. *Stotter*, 207 Mich. 329; *Republic National Bank* v. *Bobo*, 227 Mich. 6.

We conclude that defendant was not upon this record the holder in due course of the check in question and that under such circumstances the great weight of authority sustains the plaintiff's right to recover in this action.

The judgment will be affirmed.

Fead, C. J., and North, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.