### SAINT PAUL MERCURY INDEMNITY COMPANY *v.* BANK OF LANSING.

1. BANKS AND BANKING—ACCEPTANCE OF FORGED CHECK—NEGLIGENCE.

   Bank upon which forged check was drawn *held,* under the circumstances, negligent in not detecting the forgery for 6 days after accepting the check and 5 days after paying it and in not investigating before accepting $1,000 check which overdrew purported payer's account, not theretofore overdrawn, where such delay in discovery and notice to previous indorsers, after knowledge of the overdrafts, resulted in the ultimate loss.

2. SAME—DEPOSIT OF CHECK—AGENCY FOR PURPOSES OF COLLECTION ONLY.

   Check on plaintiff's assignor bank, given to defendant bank "for deposit only," constituted latter depositor's collection agent, and such agency continued until the collection was complete (CL 1948, §§ 487.602, 487.605).

3. SAME—RELATION BETWEEN BANK AND CUSTOMER—COLLECTION OF CHECK—PRINCIPAL AND AGENT.

   The relationship between bank and customer who left check with it for deposit only, subsequent to the completion of the collection, would not change the rights of the principal and agent during the existence of that relationship, which continued until the collection was complete (CL 1948, §§ 487.602, 487.605).

4. SAME—CHECKS—FORGERY—DRAWEE'S RECOVERY FROM GOOD FAITH INDORSER.

   Drawee of forged check who has paid bona fide indorser that had received it for a fair and valuable consideration, paid

---

REFERENCES FOR POINTS IN HEADNOTES

[1-7] 7 Am Jur, Banks, § 576.
[1-7] Right of drawee of forged check or draft to recover money paid thereon. 12 ALR 1089; 71 ALR 337; 121 ALR 1056.
[2] 7 Am Jur, Banks, § 448.

without the least privity or suspicion of any forgery, may not recover the amount of it after discovery of the forgery as it is the duty of the drawee to know the signature of the drawer and the *bona fides* of the holder and not be guilty of laches before making the claim.

5. Indemnity—Forged Check—Indemnitor's Action Against Indorser.

Bank's indemnitor stands in the shoes of its indemnitee, indemnitor's assignor of forged check, in action against the indemnitee's indorser.

6. Banks and Banking—Collection of Checks—Negligence.

Bank upon which forged check was drawn, which failed to exercise ordinary care in the collection of the check for defendant bank, was responsible for its negligence and delay.

7. Appeal and Error—Dismissal of Appeal—Bank Indemnitor's Recovery Against Indorser of Forged Check—Parties.

In drawee bank indemnitor's action against indorser bank which added its depositor as a defendant, for amount drawee had paid defendant bank on a check forged against drawee's customer, defendants' motion to dismiss appeal of plaintiff as against defendant bank only on ground the liability of defendants was joint is dismissed, where plaintiff is denied recovery because of its assignor's negligence in discovering forgery, and although defendant bank's depositor was made a party, no appeal was taken from a judgment in the depositor's favor.

Appeal from Ingham; Hayden (Charles H.), J., presiding. Submitted October 5, 1949. (Docket No. 30, Calendar No. 44,453.) Decided February 28, 1950.

Assumpsit by Saint Paul Mercury Indemnity Company against the Bank of Lansing for the amount of a forged check. On defendant's motion, Don McCullagh, defendant's depositor, was added as a party defendant. Judgment of no cause of action as to both defendants. Plaintiff appeals as to defendant bank. Affirmed.

*Mitts & Smith,* for plaintiff.

*Ballard, Jennings, Bishop & Ellsworth,* for defendant Bank of Lansing.

*Pierce, Planck & Ramsey,* for defendant McCullagh.

BOYLES, C. J. Plaintiff sued the defendant Bank of Lansing to recover $1,000 which plaintiff's assignor bank had paid out to the defendant bank on a check which subsequently was found to have been forged. After issue was joined, and before trial, Don McCullagh was added as a party defendant. The case was heard by Judge Charles H. Hayden of the Ingham circuit court, and judgment of no cause for action entered as to both defendants. Plaintiff appeals only as to the defendant bank.

In this Court, counsel for the defendants have moved to dismiss the appeal on the ground that the liability of the defendant bank and Don McCullagh was joint, not several, and that to consider an appeal as to only the bank as defendant would result in a cause of action entirely different from that tried in the circuit court. Consideration on this motion has been held for determination in connection with the decision of the case on the appeal.

The essential facts are not in dispute. The question for decision is as to the law to be applied to the circumstances of the case. On June 4 or 5, 1946, one Richard Berryhill negotiated with Don McCullagh, a Lansing automobile dealer, for the purchase of a car and eventually purchased it with a down payment of $600. Berryhill represented that he had been working for L&C Trucking Company at Grand Rapids, that he had just sold a truck to the trucking company for $1,000 and had received a check for that amount, dated June 4, 1946, drawn by L&C

Trucking Company on Central Bank, of Grand Rapids, and payable to himself. He tendered this check to McCullagh in payment of the $600 down payment and asked for the balance in cash. After calling Central Bank at Grand Rapids and ascertaining that the trucking company's account was sufficient to cover the check, McCullagh accepted it, consummated the sale and gave possession of the car to Berryhill.

The check in question was indorsed by McCullagh for deposit only and deposited by McCullagh in the Bank of Lansing on June 10, 1946. After passing through clearing houses said check was presented to Central Bank, of Grand Rapids, on June 13th, was accepted, and on the following day was paid. It was discovered at Central Bank that when the check for $1,000 was charged to its drawer's account on June 13th an overdraft of $540.68 was created. A further deposit on the following day reduced the overdraft to $211, but the overdraft continued to increase from that date until June 19th when it had reached a sum of $726. On the latter date one of the assistant cashiers of Central Bank communicated with the trucking company's bookkeeper at Grand Rapids and as a result of conversations between the parties it was ascertained that Berryhill had forged the drawer's name on the check. Berryhill was subsequently arrested and convicted of the forgery. On June 20th, Central Bank telephoned the Bank of Lansing and advised it of the forgery. McCullagh learned of it at about the same time. On June 21st, Central Bank wrote the defendant bank confirming its telephone conversation, asked that the trucking company be reimbursed, and suggested that Bank of Lansing make claim for its loss under its indemnity bond. Due to misdelivery of this letter it did not reach Bank of Lansing until June 25th, on which day the latter bank replied, refusing to recognize its lia-

bility in the premises. No notice whatever was given to McCullagh by the Central Bank.

On October 11, 1946, plaintiff surety company paid Central Bank $1,000 for its loss, and took an assign-, ment of all claims which said Central Bank had or might have.

Defendant Bank of Lansing relies on its claim that in collecting said check from the Central Bank it acted as the depositor's agent. By way of affirmative defenses, said defendant pleaded that Bank of Lansing was not the real party in interest, being merely the agent of a disclosed principal (McCullagh), that Central Bank was negligent, and that it was bound to know the signature of its own customer, the trucking company.

Central Bank received the check in question on June 13th, and did not uncover the forgery until June 19th. During all of that time its customer's account had been overdrawn by amounts ranging from $540.68 on June 13th, to $726 on June 19th. These overdrafts had progressively increased each day except on June 14th when the overdraft was only $211. The assistant cashier of Central Bank testified that L&C Trucking Company had never previously overdrawn its account. Also, testimony showed that another check for $100 had been forged by Berryhill and had been paid by Central Bank on June 8th. It had paid 2 checks, both of which involved forgeries on the same customer and which were undetected by the bank until the reason for the overdraft was called by the customer to the attention of the bank's officers. Until June 19th, the bank did not investigate the 2 checks to see whether the signatures were genuine. The bank notified the trucking company on June 19th that its account was overdrawn. At that time the bank was advised by the trucking company that it had not drawn the $1,000 check and thereupon the assistant cashier of

the bank, by comparing the check with the trucking company's signature card, recognized the forgery.

Under the circumstances, the bank was negligent in the first instance in not detecting the forgery, and especially in not making an investigation before accepting the $1,000 check. The forger obtained the automobile and $400 cash on June 6th, he came back again to McCullagh's in 2 or 3 days, and McCullagh's employee saw him again in Lansing a week or 10 days later. On June 16th, Berryhill was still in Lansing and if defendants had been informed of the forgery on June 13th, 14th, or 15th, they might have taken steps to protect their interests. Defendants were not informed of the forgery, by the Central Bank, in time to recover the automobile and the down payment from Berryhill. In the interim, another surety company had seized the automobile and the money because of another forgery by Berryhill. Under the circumstances, the defendants were prejudiced by the Central Bank's negligence and delay. Prompt discovery of the forgery, by the Central Bank, and notice to the defendants might have enabled the defendants to recover the $400 and the automobile delivered by McCullagh to the forger. The delay of the Central Bank in discovering the forgery and notifying the defendant bank, after knowledge of the overdrafts, resulted in the ultimate loss.

While McCullagh's account in the defendant bank was at all times in excess of the amount of the check, he did not receive final credit for the $1,000 from the Bank of Lansing until the Bank of Lansing received from the Central Bank the proceeds of the collection. McCullagh delivered the check to the Bank of Lansing for deposit only. Under the terms of the deposit agreement on which the check was delivered to the bank by McCullagh "for deposit only," the bank acted only as the depositor's collection agent.

See CL 1948, § 487.605 (Stat Ann 1943 Rev § 23.335). In forwarding the check to the Central Bank for collection, the Bank of Lansing was acting as the agent of McCullagh, and such agency continued until the collection was complete. CL 1948, § 487.602 (Stat Ann 1943 Rev § 23.332). The relationship between the Bank of Lansing and McCullagh *subsequent* to the completion of the collection (a debtor and creditor relationship?) would not change the rights of the principal and agent during the existence of that relationship, which continued until the collection was complete.

Appellant relies on *American Surety Company of New York* v. *Industrial Savings Bank,* 242 Mich 581 (60 ALR 236). There is a significant difference in the factual background. In the *American Surety Company Case,* forged checks were deposited or paid through the clearing house on February 8th and 9th. The drawee banks discovered the forgery on February 10th, payment was promptly demanded and refused. The Court said that both banks were somewhat negligent in not discovering the forgeries of their customer's signatures. Under the circumstances, the Court held that inasmuch as the depositor's account had not been drawn down below the amount of the check, the defendant bank was not a holder in due course, "except as the question of negligence bears on plaintiff's right to recover." The general rule announced by the Court in the *American Surety Company Case,* citing cases supporting it as the majority rule followed by American courts, controls the case at bar.

"The question before us is whether we have on this record a case justifying the recovery by bank A from Bank B of the money paid by A to B on the check of its own customer, which check is admittedly a forgery. Textwriters and courts considering the

question here involved hark back to *Price* v. *Neal,*
3 Burr 1354 (97 Eng Rep 871), decided by Lord
Mansfield in 1762. The case involved the duty of
the drawee of a draft to know the drawer's signa-
ture and the right of the drawee to recover the
amount paid by him on a forged instrument. Lord
Mansfield said:

" 'It is an action upon the case, for money had and
received to the plaintiff's use. In which action, the
plaintiff can not recover the money, unless it be
against conscience in the defendant, to retain it; and
great liberality is always allowed, in this sort of
action.

" 'But it can never be thought unconscientious in
the defendant, to retain this money, when he has
once received it upon a bill of exchange indorsed to
him for a fair and valuable consideration, which he
had *bona fide* paid, without the least privity or sus-
picion of any forgery.

" 'Here was no fraud: no wrong. It was incumbent
upon the plaintiff, to be satisfied "that the bill drawn
upon him was the drawer's hand," before he accepted
or paid it; but it was not incumbent upon the de-
fendant, to inquire into it.'

"An examination of the case will disclose that it
possessed three elements: (1) The duty of the
drawee to know the signature of the drawer—as ap-
plied to modern banking, the duty of the bank to
know the signature of its customer; (2) The *bona
fides* of the holder; and (3) the laches of the payee
before making any claim. We note that these three
elements are present in the case as an examination
of later cases shows a disposition of the courts to
pick out one of these elements, such as may suit their
fancy, as the controlling grounds of decision. The
rule announced in this case received early approval
in this country, and in 1825 Mr. Justice Story, writ-
ing for the court in *Bank of the United States* v.
*Bank of Georgia,* 10 Wheat (23 US) 333, 354, 355 (6
L ed 334), said:

" 'After some research, we have not been able to find a single case, in which the general doctrine, thus asserted, has been shaken, or even doubted; and the diligence of the counsel for the defendants on the present occasion, has not been more successful than our own. Considering, then, as we do, that the doctrine is well established, that the acceptor is bound to know the handwriting of the drawer, and cannot defend himself from payment by a subsequent discovery of the forgery, we are of opinion, that the present case falls directly within the same principle.'

"An examination of the American cases is satisfying that the great majority of the American courts have in the final analysis followed the doctrine of *Price* v. *Neal,* at least where all the elements of that case are present." *American Surety Company of New York* v. *Industrial Savings Bank,* 242 Mich 581, 583, 584 (60 ALR 236).

Plaintiff indemnity company stands in the shoes of its assignor. The Central Bank, plaintiff's assignor, is responsible for its negligence and delay and its failure to exercise ordinary care in the collection of the check for the Bank of Lansing.

"It shall be the duty of the initial or any subsequent agent collecting bank to exercise ordinary care in the collection of an item.  *  *  *  An initial or subsequent agent collecting bank shall be liable for its own lack of exercise of ordinary care but shall not be liable for the neglect, misconduct, mistakes or defaults of any other agent bank or of the drawee or payor bank." CL 1948, § 487.605 (Stat Ann 1943 Rev § 23.335).

The Bank of Lansing did not interplead McCullagh, nor is this a case where the Bank of Lansing is seeking a judgment against McCullagh. In view of our conclusion that the plaintiff cannot recover from the defendant bank, and has not appealed from

the judgment of no cause for action in favor of Mc-Cullagh, other questions raised on the appeal do not require consideration. The significant distinction between the *American Surety Company Case, supra,* on which appellant relies, and the case at bar is that in the former case the payee was not a party, while in the instant case the payee, McCullagh, was a party defendant and a judgment of no cause for action was entered in his favor in the circuit court. As to McCullagh, no appeal has been taken.

The appellee's motion to dismiss the appeal as to the defendant bank is denied and the judgment of no cause for action as to the defendant bank is affirmed, with costs.

REID, NORTH, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred. DETHMERS, J., concurred in the result.