THE GEORGIA RAILROAD AND BANKING COMPANY *v.* THE LOVE AND GOOD WILL SOCIETY.

That a bank which paid out money on checks to which a depositor's signature was forged, did so in good faith, believing from inquiry of the person presenting the checks that he was authorized to sign the depositor's name, does not relieve it from liability to the depositor.

(*a*) Newly discovered evidence which could not possibly change the result is not ground for a new trial.

April 23, 1890.

Banks. Forgery. *Bona fides.* Before Judge EVE. City court of Richmond county. September term, 1889.

The Love and Good Will Society, a corporation, sued the Georgia Railroad and Banking Company for $275 and interest, upon a general deposit account. The defendant pleaded that it was only indebted to plaintiff $85, which it has always been ready to pay, and which it now offers to pay.

Upon the trial it appeared from the constitution of the plaintiff that it was organized for benevolent purposes. It was the duty of the treasurer to take in hand all its money, to be responsible for the money in his charge, to refuse to pay out any money without a written order from the president or a majority of the members, and to keep an account of the money collected and paid out, which should balance with the secretary's at all times. It was the duty of the secretary to keep an account of all the proceedings of the society, and to keep all books belonging to it except such as were entrusted to the treasurer. He was entitled to a monthly salary in an amount not stated.

Anderson Minyard testified for the plaintiff as follows : He was treasurer of the society, and on several occasions made deposits in the bank of money belonging to it, amounting in all to $306.20. The deposit

was made in his name as treasurer, and he never drew out any of it, except on two occasions when he drew checks for $16.20 and for $15, respectively. He could not write, and had never left any signature at the bank. With the exception of the two above mentioned checks, he never drew or authorized any one else to draw any checks against this fund, nor did he authorize any one to sign his name as treasurer to any check. He kept the bank book himself; never let it go out of his possession; kept it locked in a box the key of which another member of the society kept. Cæsar Coleman was at that time the recording secretary of the society. Checks drawn on the bank signed Anderson Minyard, treasurer, amounting to $275, were shown to witness, all of which he denied signing or having authorized the signing, except the two referred to above. He never got back any of the money, except that drawn on the two checks. One Stevens, the president of the society, testified that the checks referred to were drawn without his authority, and that the society had never received any of the money drawn out by them. It was also shown that a draft drawn by Minyard, treasurer, and countersigned by Stevens, president, on February 29, 1888, for $290, had been presented to the bank before Minyard had drawn the $15 check, and that payment of it had been refused.

The paying teller of the bank testified as follows: Certain checks signed Anderson Minyard, treasurer, were presented by Cæsar Coleman, which witness paid out of the fund in question. He knew Minyard could not write, and took Coleman's representation that the signatures to the checks were authorized by Minyard. He knew that Coleman was recording secretary of plaintiff. Upon paying the first check, not being certain just how the account stood on the books of the company, he laid it aside on his desk; and when Coleman presented

the second check, he told him the next time he came to bring the bank book so he could see how or in what name the account stood. Witness only knew this society had deposited money there through its officers, but did not know exactly how it was entered. When Coleman came the third time he brought the book, which was returned to him as soon as witness examined it. All the checks that are now said to be forged were presented by Coleman. The checks claimed to be forged were put in evidence. They bear dates at different times from October 4, 1886, to January 21, 1888. All are payable to Coleman or bearer, two signed apparently by Stevens, and the remainder apparently by Minyard. From a statement of the account in the record, it appears that the two checks which Minyard acknowledged having drawn, were drawn after the dates of the checks alleged to be forged.

The jury found for the plaintiff $275, with interest from February 29, 1888. The defendant moved for a new trial on the following grounds:

(1-2) Verdict contrary to law and evidence.

(3) Error in refusing to charge as follows: · If the checks purporting to be signed by the treasurer, Minyard, were in fact signed by another in his name, then the genuineness of the checks was not attested by his signature, but was a fact to be ascertained by inquiry. If Coleman, by reason of his being an officer of the society, or by reason of his having made the deposit for the society, was a person to whom the bank could reasonably apply for information as to the genuineness of the checks presented by him, the bank had a right to act upon the information he gave as if·it were true, although in fact it was false. If one of two innocent parties are to suffer, he who has by his own acts put it in the power of the third party to commit the fraud, must bear the loss. Therefore if this society put it in

Coleman's power, by their own acts, to make the bank believe that Coleman was the agent of the society to attend to its banking business, then the society is estopped from denying the agency, and the checks drawn by him, though unauthorized, are a sufficient acquittance to the bank.

(4) Newly discovered testimony. In support of this ground the defendant produced evidence tending to show that after the presentation of the first check, the teller of the bank sent a note, which was delivered to the president of the plaintiff, requesting that the plaintiff's pass-book be presented, so as to show in what name the account stood, as the signature was not correct. This note was sent in October, 1886, by one Cartledge, who handed it to one Cook, who delivered it to Stevens, who read it in Cook's presence. The witnesses who testified as to these facts were worthy of credit. The defendant and its counsel had heard that there were persons who would testify to these facts, but did not at the time of the trial, or before, know where to find these witnesses, nor were they able to do so, though they had diligent inquiry made after them. They did not find them until after the trial, and did not at the time of the trial have any hope of finding them.

The motion was overruled, and defendant excepted.

J. B. CUMMING and BRYAN CUMMING, by brief, for plaintiff in error, cited 10 Wall. 604, 644; 5 Am. & Eng. Cor. Cas. 176; 78 Ga. 574.

F. W. CAPERS, Jr., by brief, contra, cited 10 Wall. 154; 18 Id. 619; 9 Am. Dec. 418; 39 Id. 519; 81 Ga. 597; Morse on Banks and Banking.

SIMMONS, Justice.

There was no error in refusing to grant a new trial in this case on the grounds stated in the motion. Anderson Minyard, as treasurer, deposited the money

with the bank. Cæsar Coleman forged Anderson. Minyard's name to divers and sundry checks which were paid to Coleman by the bank. The officers of the bank knew that Minyard, the treasurer, could not write, but accepted the statement of Coleman that he was authorized to sign Minyard's name, and paid the money when the checks were presented by Coleman. When a bank receives money on deposit from a person, it must be certain when it pays it out that it does so upon the depositor's order. It cannot avoid liability by showing that it acted in good faith, and that it believed from inquiry of the person presenting the checks that he was authorized to sign the name of the depositor to the same. Under the facts of this case, the signatures were forgeries and the bank is liable for the money paid out thereon. The newly discovered evidence could not possibly change the result if a new trial were granted.      *Judgment affirmed.*