## WOODS *et al. v.* COLONY BANK.

1. Portions of a demurrer which are " speaking " should be overruled.
2. The rule that a drawee is presumed to know his drawer's signature, and hence can not recover back money paid through a mistake of fact upon a bill to which the drawer's signature was forged, is not available in favor of a holder who by his own negligence contributed to the success of the fraud practiced, and whose conduct had a tendency to mislead the drawee, who was himself free from fault.

Argued January 7, — Decided February 6, 1902.

Complaint. Before Judge Roberts. Irwin superior court. April 10, 1901.

Counsel cited, among other authorities, the following, on the question dealt with in the second headnote: First Nat. Bank *v.* State Bank, 22 Neb. 769; Ellis *v.* Trust Co., 4 Ohio St. 626, 662, s. c. 64 Am. Dec. 610; Goddard *v.* Bank, 4 N. Y. 147; Bank of Commerce *v.* Union Bank, 3 N. Y. 230; Third Nat. Bank *v.* Allen, 59 Mo. 310; Espy *v.* Bank, 18 Wall, 604; Quincy First Nat. Bank *v.* Ricker, 71 Ill. 439; Nat. Bank of North America *v.* Bangs, 106 Mass. 441, s. c. 8 Am. Rep. 349; Allen *v.* Bank, 59 N. Y. 12; Welch *v.* Goodwin, 123 Mass. 71, s. c. 25 Am. Rep. 24; First Nat.

Bank of Danvers v. First Nat. Bank of Salem, 151 Mass. 280; Gloucester Bank v. Salem Bank, 17 Mass. 33; Selser v. Brock, 3 Ohio St. 302; Fullerton v. Sturges, 4 Ohio St. 530; Mass. L. Ins. Co. v. Eshelman, 30 Ohio St. 659.

*Hal Lawson* and *Eldridge Cutts*, for plaintiff in error.
*J. H. Martin*, contra.

LEWIS, J.    Woods & Malone brought suit against the Colony Bank, making in their petition substantially the following allegations.    On a named day, a draft for $150, payable to A. W. Hodge or bearer, and purporting to have been drawn by Jacob Dorminy upon petitioners, was cashed by the defendant and transferred to it by the person then having it in possession.    At the time of cashing the draft the defendant was guilty of negligence in failing to require any identification of the person presenting it, and in failing to use any diligence to ascertain whether or not the signature of Jacob Dorminy was genuine.    The defendant indorsed the draft, and in due time it was presented to petitioners for payment. Petitioners, in the exercise of all due diligence, and believing the paper to be genuine, paid it and charged the amount to the account of Dorminy, the defendant receiving the sum thus paid.    Subsequently the signature of Jacob Dorminy was discovered to have been forged; whereupon petitioners credited Dorminy's account with the amount with which it had been charged, and promptly notified the defendant that the paper was a forgery, and demanded the return of the money paid it by petitioners, which demand was refused. The payment of the amount of the draft by petitioners was made under a mistake of fact as to the genuineness of the signature of Jacob Dorminy, and petitioners were guilty of no negligence in the matter.    They sued to recover back from the defendant the money paid on the draft, with interest.    Attached to the petition as an exhibit was a copy of the draft, on the back of which was the indorsement, "A. W. Hodge," and the following indorsement by the defendant:  "Pay to order of any bank or banker.    The Colony Bank, Fitzgerald, Ga., Wm. R. Bowen, Cashier."    The defendant demurred generally; and also demurred specially on the grounds, that the petition did not allege what person transferred the alleged draft to the defendant; that the petition shows that if the plaintiffs have sustained any loss, it was by their own neglect and careless-

ness, it appearing that Dorminy was a patron of the plaintiffs and not of the defendant, and if the plaintiffs paid out money to take up the draft without knowing the signature of their patron, they did so at their peril; that the defendant had nothing to do with the draft except to forward it for collection, and was consequently not liable to the plaintiffs if they paid it under the belief that it was genuine when it was in fact a forgery; and that the petition did not allege that the defendant knew that Dorminy's signature to the draft was a forgery. The court sustained the demurrer and dismissed the petition; whereupon the plaintiffs excepted.

1. Those portions of the demurrer which allege that the bank had nothing to do with the alleged forged paper except to forward it for collection set up matter of defense and not of demurrer, and should have been overruled as "speaking." See *Beckner* v. *Beckner*, 104 *Ga.* 219.

2. It is a rule of the common law that the drawee of a bill of exchange is presumed to know his drawer's signature, or at least is presumed to know it better than a stranger; and hence it was held that if a drawee innocently pays a forged bill to one who has bought the paper bona fide, he can not recover back the money so paid upon discovery of the forgery. The leading English case on this subject is Price *v.* Neal, 3 Burr. 1354, which has been cited approvingly and followed by many of the courts of this country. See Bank of U. S. *v.* Bank of Georgia, 10 Wheat. 333; Bank of Commerce *v.* Union Bank, 3 Coms. (N. Y.) 230; Goddard *v.* Merchants Bank, 4 Coms. 147; National Park Bank *v.* Ninth National Bank, 46 N. Y. 77; Bernheimer *v.* Marshall, 2 Minn. 78; Bank *v.* Boutell (Minn.), 62 N. W. 327; Deposit Bank *v.* Georgetown Bank (Ky.), 13 S. W. 339; Bank *v.* Bank, 58 Ohio St. 207; Stout *v.* Benoist, 39 Mo. 277; Bank *v.* Bank, 10 Vt. 141; Bank *v.* Bank, 30 Md. 11; Bank *v.* Bank (Ia.), 77 N. W. 1045. Allen, J., in the case of National Park Bank *v.* Ninth National Bank, supra, asserts that "the rule extends as well to the case of a bill paid upon presentment as to one accepted and afterwards paid," and adds: "A rule so well established, and so firmly rooted and grounded in the jurisprudence of the country, ought not to be overruled or disregarded;" while the Missouri case of Stout *v.* Benoist, supra, lays down, as the reason of the rule, that "Where persons are equally innocent, and one is bound to know and act upon his knowledge, and the other has

no means of knowledge, it would be unjust to burden the latter with a loss for the purpose of exonerating the former." Some of the cases cited carry the rule to its farthest limit, and hold that under no circumstances (except, of course, where the purchaser of the bill has participated in the fraud upon the drawee) will the drawee be allowed to recover back money paid under a mistake of fact upon a bill of exchange to which the name of the drawer has been forged. This doctrine, however, has been freely criticised by eminent authorities. See 2 Morse, Banks & Banking, §§ 463, 464; 2 Daniel, Neg. Inst. § 1361. Mr. Daniel says: "When the holder has received the bill after its acceptance, the acceptor stands toward him as a warrantor of its genuineness, and receiving the bill upon faith in the acceptor's representation, there is obvious propriety in maintaining his right to hold the acceptor absolutely bound. Indeed, the acceptor, being the primary debtor, stands just as the maker of a genuine promissory note. But when the holder of an unaccepted bill presents it to the drawee for acceptance or payment, the very reverse of this rule would seem to apply; for the holder then represents, in effect, to the drawee, that he holds the bill of the drawer, and demands its acceptance or payment, as such. If he indorses it, he warrants its genuineness; and his very assertion of ownership is a warranty of genuineness in itself. Therefore, should the drawee pay it or accept it upon such presentment, and afterward discover that it was forged, he should be permitted to recover the amount from the holder to whom he pays it, or as against him to dispute the binding force of his acceptance, provided he acts with due diligence." The case of Bank *v.* Bank, 1 Hill (N. Y.), 287, upon a state of facts quite similar to those set up in the petition in the present case, held that although the holders were innocent of any intended wrong, they had obtained money of the plaintiffs on an instrument to which they had no title, and were therefore bound to refund; and this though notice of the forgery was not given until more than two months after they had received the money. In view of the later New York cases cited supra, however, the case last cited would seem not to state the rule prevailing in that State. In the case of McKleroy *v.* Southern Bank, 14 La. An. 458, a forged draft was accepted by the plaintiffs after it had been paid by the holder, who was a bona fide and innocent purchaser of the instrument. It was paid by the drawees upon maturity, and

the fact of the forgery discovered some weeks later. They immediately notified the bank which had cashed the draft, and brought suit to recover the money paid by them. The court ruled: "The acceptance of a bill of exchange admits the genuineness of the drawer's signature, and where an acceptor has paid to a bona fide holder of a forged draft or bill, having no notice of the forgery, he can not recovery back the money paid. But where a party becomes the holder of such a draft, before it has been accepted, and when the loss had already attached, it was accepted and paid, and the acceptors, immediately upon ascertaining the fact of the forgery, gave notice of this fact to the holders — *Held*, that such a case is an exception to the general rule, and the acceptors are not estopped from proving the forgery, and recovering the money they paid through error." This, it may be observed, is a leading case in this country, and has been cited with approval by many of the best authorities.

The rule that a drawee is presumed to know his drawer's signature, or at least that he is presumed to know it better than a stranger, is founded on sound reason, and is predicated upon the further presumption that the drawer is a customer or business associate of the drawee, and that their business relations have been such as to insure such knowledge on the part of the drawee. But, in determining the relative rights of a drawee who, under a mistake of fact, has paid, and a holder who has received such payment upon a draft to which the name of the drawer has been forged, it would seem to be only fair to consider the question of diligence or negligence of the parties in respect thereto. If the holder has been negligent in paying the forged paper, or has, by his conduct, however innocent, misled or deceived the drawee to his damage, it would be unjust for him to be allowed to shield himself from the results of his own carelessness by asserting that the drawee was bound in law to know his drawer's signature. Of course the drawee must, in order to recover back from the holder, show that he himself was free from fault. An examination of the case of Price *v.* Neal, supra, which is cited with confidence by counsel for the defendant in error, will show that the underlying principle of the decision was the negligence of the drawee. Says Lord Mansfield, in that case: "The plaintiff lies by, for a considerable time after he has paid these bills, and then found out that they were forged, and the for-

ger comes to be hanged. . . Whatever neglect there was, was on his side. . . It is a misfortune which has happened without the defendant's fault or neglect . . if there was fault or neglect in any one, it certainly was in the plaintiff, and not in the defendant." It will be observed that this statement of facts is very different from the one set up in the petition of the plaintiff in the present case. It will also be found, upon examination, that in all of the well-considered cases which hold that the drawee can not recover back money paid upon a forged draft, there exists the same element of negligence upon the part of the drawee; he had not used due diligence to discover the forgery, or had not been diligent in notifying the holder when it was discovered. The case which to our minds most clearly states the true rule upon the subject under consideration is that of Bank v. Bangs, 106 Mass. 441, which rules that "The responsibility of the drawee, who pays a forged check, for the genuineness of the drawer's signature, is absolute only in favor of one who has not by his own fault or negligence contributed to the success of the fraud or to mislead the drawee; and if the payee took the check, drawn payable to his order, from a stranger or other third person, without inquiry, although in good faith and for value, and gave it currency and credit by indorsing it before receiving payment of it, the drawee may recover back the money paid." The court in that case cites the case of Price v. Neal, supra, and recognizes the rule that the drawee is presumed to be familiar with the signature of his drawer, as giving rise to a responsibility on the part of the drawee which will ordinarily prevent him from recovering back money paid upon a forged check or draft on the ground of mistake of fact. It adds, however: "But this responsibility, based upon presumption alone, is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made." This language seems to us to state clearly the true law upon the subject, and to be peculiarly applicable to the case at bar.

Tested by what has been said, the petition in the record before us measures fully up to the requirements of law. According to it, the defendant bank was grossly negligent in paying out money to a man of whom they knew nothing, upon a paper as to the genuineness of which they knew nothing, and in failing to take any precautionary measures to obtain information in regard to either.

Its cashier then indorsed the draft and sent it forward for collection. Whether this be considered as an indorsement transferring title to the paper and warranting its genuineness, or merely as an indorsement for collection, it was such an act as was likely to throw the plaintiffs off their guard and mislead them, on account of the channels through which it came, into the belief that the paper was what it purported to be. 2 Dan. Neg. Inst. § 1361. And it is to be observed that, if the allegations of the petition be true, the plaintiffs have done nothing to change the status of the defendant to its injury, and a recovery by them would not in any way affect the position of the bank. The loss attached when the bank cashed the forged draft. If that loss was due to the negligence of the bank, it should fall upon its shoulders, and not upon those who have acted innocently and without negligence. At any rate, the petition set out a good cause of action, and the question of negligence should have been submitted to a jury.

<em>Judgment reversed. All the Justices concurring.</em>