CAIRO BANKING COMPANY *v.* WEST *et al.*

No. 12544. FEBRUARY 14, 1939. REHEARING DENIED MARCH 10, 1939.

*Jeff A. Pope,* for plaintiff.

*S. P. Cain, R. A. Bell, Alexander & Jones,* and *Harrell & Lilly,* for defendants.

ATKINSON, Presiding Justice. During the months of January and February, 1937, B. W. West, doing business as West Packing Company, was a depositor in the Cairo Banking Company. An unauthorized and undisclosed person obtained certain blank checks, each carrying a different serial number, and on the top of which were the printed words: "West Packing Company, Fresh and Cured Meats, and Meat Products." The signature "West Packing Company" was also printed on the checks. Alton Hall was an agent authorized to sign checks for West Packing Company. Sixty-two of such checks, aggregating $1860.70, were executed by such undisclosed person, payable to fictitious payees, by forging the signature of Alton Hall under the printed signature of "West Packing Company." Each check was indorsed in the name of the payee, and they were negotiated to various merchants and other persons who likewise indorsed them. The checks passed through the Commercial Bank of Thomasville, then through the Citizens Bank of Cairo, and finally were paid by the Cairo Banking Company (the drawee bank) and charged to the account of West Packing Company. After the canceled checks were returned to the West Company, an unauthorized and undisclosed person removed the forged

checks. Within sixty days after return of the canceled checks West discovered the forgery, notified the bank and demanded payment, which was refused. West brought suit in the city court of Cairo against the Cairo Banking Company, seeking judgment for the amount of the checks. Subsequently the Cairo Banking Company instituted an equitable action against B. W. West, the Citizens Bank of Cairo, the Commercial Bank of Thomasville, and named merchants who had cashed the checks. The equitable petition as amended contained allegations in substance as follows: The checks sued on were indorsed by the various defendants except West; each was indorsed by the Commercial Bank of Thomasville and by the Citizens Bank of Cairo; each defendant except West in indorsing the checks warranted they had a good title, that the checks were genuine and in all respects what they purported to be, that all prior parties thereto had capacity to contract, that the payees were actually in existence, and that the indorsements of the payees were genuine. Each defendant, except West, was guilty of gross negligence in cashing the checks, in failing to exercise the slightest diligence in ascertaining whether or not the checks were genuine, and in failing to require proper identification of the payees. "If it should be determined that said checks are as a matter of fact forgeries, then" West was guilty of gross negligence in allowing unauthorized persons access to his blank checks. The blank forms bearing special printing and serial numbers applicable to West would lead the average prudent man to believe the checks were genuine. West was further negligent in failing to discover that the blank forms had been taken from his possession, and in failing to immediately notify petitioner; also in permitting unauthorized persons access to his bank statements and canceled checks, and in allowing the forged checks to be removed, without first examining the canceled checks to determine their genuineness. West does not have in his possession the original checks which were forged; and he was grossly negligent in allowing unauthorized persons access to them. Each and every defendant except West is liable to petitioner under the respective indorsements of each warranting the genuineness of each such check; and petitioner was without any fault whatsoever. An exhibit was attached, setting forth in detail the serial number, date, payee, indorsers, and amount of each of the forged checks, as illustrated by one, a copy of which follows:

"No. Dated Payable to Indorsed Sum
571 Jan. 2, 1937. J. L. Collins J. L. Collins $12.50."
 Palm Grocery.
 Mrs. W. P. Jackson.

The prayers were to enjoin the suit in the city court, and in order to avoid a multiplicity of actions that all of the defendants be required to appear in one action, and that the court of equity determine the rights of the several parties; and for general relief. The defendants filed demurrers on the ground, among others, that the allegations of the petition did not set forth a cause of action for the relief prayed. The exception is to an order which sustained the demurrers and dismissed the action.

 In passing on the rights of a drawee bank and a depositor, where the drawer's signature was forged, it was said, in *Atlanta National Bank* v. *Burke*, 81 *Ga.* 597 (7 S. E. 738, 2 L. R. A. 96): "Where one deposits money in a bank on general deposit, the bank immediately becomes the debtor of the depositor for the money deposited, and undertakes, impliedly, to pay that money either to the depositor or to some person to whom he directs it paid, and in order to discharge itself from this liability to the depositor, the bank must pay the money to the depositor or as directed by him. The liability can not be discharged in any other way." In *Georgia Railroad & Banking Co.* v. *Love &c. Society*, 85 *Ga.* 293 (11 S. E. 616), it was held: "That a bank which paid out money on checks to which a depositor's signature was forged did so in good faith, believing from inquiry of the person presenting the checks that he was authorized to sign the depositor's name, does not relieve it from liability to the depositor." See also *Darien Bank* v. *Clifton*, 156 *Ga.* 65 (118 S. E. 641); *First National Bank of Ocilla* v. *Harris*, 25 *Ga. App.* 667 (104 S. E. 574); *Moore* v. *Moultrie Banking Co.*, 39 *Ga. App.* 687 (148 S. E. 311); *First National Bank of Waycross* v. *Guaranty Life Insurance Co.*, 45 *Ga. App.* 289 (164 S. E. 212); *Federal Deposit Insurance Cor.* v. *Thompson*, 54 *Ga. App.* 611 (188 S. E. 737). In the instant case the forged checks passed through several hands, finally reaching the drawee bank which paid them and forwarded the canceled checks to the depositor, who within sixty days notified the drawee bank of the forgery and demanded that the amount of the forged checks be returned to his bank balance. The depositor did not owe any duty to the bank as

to safeguarding the check-book and canceled checks, and the fact that an unauthorized person used the blank checks in perpetrating the forgery and abstracted the canceled checks after payment would not, in the circumstances stated above, be negligence as against the bank, or authorize the bank to charge the forged checks to the depositor's account. This accords with Insurance Co. of North America v. Fourth National Bank of Atlanta, 12 Fed. (2d) 100, where it was said: "When the banker renders his account to the depositor, with the paid checks as vouchers, the depositor owes a duty of diligence to examine it within a reasonable time, and to recognize and report either errors in the account, or forgeries of the signature, or alteration of the amount of the checks, because the depositor should know whether he signed each check and for what amount." In the case now before us it was alleged that notice was duly given by the depositor, in connection with the Code, § 13-2044, which declares: "No bank which in good faith has paid, and charged to the account of a depositor, any money on a forged or raised check issued in the name of the depositor shall be liable to said depositor for the amount paid thereon, unless, (1) within 60 days after the return to the depositor of the voucher representing such payment, the depositor shall notify the bank that the check so paid was forged or raised."

■ Another question is as to the right of the drawee bank, after payment of the forged checks, against the several previous indorsers. It is declared by statute: "Every person negotiating an instrument by delivery or by a qualified indorsement warrants: (1) That the instrument is genuine and in all respects what it purports to be. (2) That he has a good title to it. (3) That all prior parties had capacity to contract. (4) That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless." Code, § 14-606. "As respects one another, indorsers are liable prima facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally." § 14-609. The case of Woods v. Colony Bank, 114 Ga. 683 (40 S. E. 720, 56 L. R. A. 929), was one in which a forged draft drawn on Woods & Malone was cashed by the Colony Bank, and presented to the drawees and paid by them, after which they

sued the bank. The petition was demurred to generally, and specially on the grounds: that it did not allege what person transferred the alleged draft to the defendant; that the petition showed that if the plaintiffs had sustained any loss, it was by their own neglect and carelessness, it appearing that the drawer whose name was forged was a patron of the plaintiffs and not of the defendant, and if the plaintiffs paid out money to take up the draft without knowing the signature of their patron, they did so at their peril; that the defendant had nothing to do with the draft except to forward it for collection, and consequently was not liable to the plaintiffs if they paid it under the belief that it was genuine when it was in fact a forgery; and that the petition did not allege that the defendant knew that the drawer's signature to the draft was a forgery. The court sustained the demurrer and dismissed the action. It was held: "The rule that a drawee is presumed to know his drawer's signature, and hence can not recover back money paid through a mistake of fact upon a bill to which the drawer's signature was forged, is not available in favor of a holder who by his own negligence contributed to the success of the fraud practiced, and whose conduct had a tendency to mislead the drawee, who was himself free from fault." In the opinion it was said:

"The rule that a drawee is presumed to know his drawer's signature, or at least that he is presumed to know it better than a stranger, is founded on sound reason, and is predicated upon the further presumption that the drawer is a customer or business associate of the drawee, and that their business relations have been such as to insure such knowledge on the part of the drawee. But, in determining the relative rights of a drawee who, under a mistake of fact, has paid, and a holder who has received such payment upon a draft to which the name of the drawer has been forged, it would seem to be only fair to consider the question of diligence or negligence of the parties in respect thereto. If the holder has been negligent in paying the forged paper, or has, by his conduct, however innocent, misled or deceived the drawee to his damage, it would be unjust for him to be allowed to shield himself from the results of his own carelessness by asserting that the drawee was bound in law to know his drawer's signature. Of course the drawee must, in order to recover back from the holder, show that he himself was free from fault. An examination of the case of Price v. Neal [3

Burr. 1354], . . which is cited with confidence by counsel for the defendant in error, will show that the underlying principle of the decision was the negligence of the drawee. Says Lord Mansfield in that case: 'The plaintiff lies by, for a considerable time after he has paid these bills, and then found out that they were forged, and the forger comes to be hanged. . . Whatever neglect there was, was on his side. . . It is a misfortune which has happened without the defendant's fault or neglect . . if there was fault or neglect in any one, it certainly was in the plaintiff, and not in the defendant.' It will be observed that this statement of facts is very different from the one set up in the petition of the plaintiff in the present case. It will also be found, upon examination, that in all of the well-considered cases which hold that the drawee can not recover back money paid upon a forged draft, there exists the same element of negligence upon the part of the drawee; he had not used due diligence to discover the forgery, or had not been diligent in notifying the holder when it was discovered. The case which to our minds most clearly states the true rule upon the subject under consideration is that of Bank v. Bangs, 106 Mass. 441 [8 Am. R. 349], which rules that 'The responsibility of the drawee, who pays a forged check, for the genuineness of the drawer's signature, is absolute only in favor of one who has not by his own fault or negligence contributed to the success of the fraud or to mislead the drawee; and if the payee took the check, drawn payable to his order, from a stranger or other third person, without inquiry, although in good faith and for value, and gave it currency and credit by indorsing it before receiving payment of it, the drawee may recover back the money paid.' The court in that case cites the case of Price v. Neal, supra, and recognizes the rule that the drawee is presumed to be familiar with the signature of his drawer, as giving rise to a responsibility on the part of the drawee which will ordinarily prevent him from recovering back money paid upon a forged check or draft on the ground of mistake of fact. It adds, however: 'But this responsibility, based upon presumption alone, is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made.' This language seems to us to state clearly the true law upon the subject, and to be peculiarly applicable to the case at bar.

"Tested by what has been said, the petition in the record before us measures fully up to the requirements of law. According to it, the defendant bank was grossly negligent in paying out money to a man of whom they knew nothing, upon a paper as to the genuineness of which they knew nothing, and in failing to take any precautionary measures to obtain information in regard to either. Its cashier then indorsed the draft and sent it forward for collection. Whether this be considered as an indorsement transferring title to the paper and warranting its genuineness, or merely as an indorsement for collection, it was such an act as was likely to throw the plaintiffs off their guard and mislead them, on account of the channels through which it came, into the belief that the paper was what it purported to be. 2 Dan. Neg. Inst. § 1361. And it is to be observed that, if the allegations of the petition be true, the plaintiffs have done nothing to change the status of the defendant to its injury, and a recovery by them would not in any way affect the position of the bank. The loss attached when the bank cashed the forged draft. If that loss was due to the negligence of the bank, it should fall upon its shoulders, and not upon those who have acted innocently and without negligence. At any rate, the petition set out a good cause of action, and the question of negligence should have been submitted to a jury."

In *Yatesville Banking Co.* v. *Fourth National Bank,* 10 *Ga. App.* 1 (72 S. E. 528), it was held: "Where a drawee of a negotiable instrument pays it to a person holding it through and under a forged indorsement of the payee's name, he may (subject to certain limitations) recover from the person receiving the money on the paper the sum so paid, either in an action in the nature of an action for money had and received, or in an action upon the warranty implied from the presentation of the instrument that the indorsements thereon are genuine, or in an action upon an express warranty that the indorsements are genuine, if such an express warranty has been made." In *Swan-Edwards Co.* v. *Union Savings Bank,* 17 *Ga. App.* 572 (87 S. E. 825), it was held: "A bank is presumed to know the signature of one of its depositors, and therefore can not recover from a bona fide holder for value money paid by the bank upon a check to which the drawer's signature was forged, unless it appears that the holder, by his own negligence, contributed to the success of the fraud practiced, or his conduct had a tendency to mislead

the drawee, which was itself free from fault. *Woods* v. *Colony Bank,* 114 *Ga.* 683 (2), 685 (40 S. E. 720, 56 L. R. A. 929) ; 2 Michie on Banks and Banking, § 147, p. 1196, and cases there cited. Any seeming conflict in principle between this ruling and the ruling in *Woods* v. *Colony Bank,* supra, disappears on examination of the particular facts in that case." In *Hutcheson Hardware Co.* v. *Planters State Bank,* 26 *Ga. App.* 321 (105 S. E. 854), the facts were stated as follows: "Hutcheson Hardware Company were merchants in Sandersville, Georgia. A man came into their store to buy a gun, and selected one for $40. He tendered in .payment a check for $297.51, and asked that the price of the gun be deducted from the amount of the check, and the merchant pay to him the balance. The check was made payable to the order of 'Sill Huff,' and the man stated to the merchant that he was the payee, Sill Huff, and indorsed the check. He further stated that no one knew him in the town, and that he was an entire stranger in the community. The check was drawn on the Planters State Bank of Davisboro, and purported to be drawn by J. F. Raley. The alleged payee of the check told the merchant that the signature of the drawer was known to the cashier of a bank in Sandersville. Before cashing the check, the merchant went to that bank and, exhibiting the check to the cashier, asked him if the signature, J. F. Raley, was genuine, and the cashier answered, 'It looks like Mr. Raley's signature; I wouldn't swear it is his signature, but I think you will be perfectly safe in cashing the check.' The merchant (as appears from his testimony) then telephoned to the drawee bank and said: 'I have got a check here signed by Mr. J. F. Raley, payable to Sill Huff for $297.51. Is it good?' and the reply was 'It is good for a thousand dollars.' The man presenting the check to the merchant told him also that Mr. J. F. Raley gave him this check in payment of an indebtedness, that he had been working for Mr. Raley during the year, and the check was in payment of his wages. The hardware company paid him the money on the check, less the price of the gun, and indorsed the check and deposited [it] in a bank through which it was collected from the drawee bank in the usual way. The drawee bank, not suspecting the forgery, paid the check, charged the amount against Mr. Raley's account, and on the first of the following month mailed the usual bank statement to its depositor, who, on looking over the statement, discovered the

check and at once went to the drawee bank and stated that he had not signed the check and had not given any check to Sill Huff. The drawee bank, convinced that the check was a forgery, gave Mr. Raley credit for the amount paid on the check, and brought suit to recover the amount from the hardware company. It was conceded that the check was a forgery, that Sill Huff had not presented the check to the hardware company, and that the signatures of the drawer and payee and the indorsement of the check in the name of Sill Huff were forgeries." It was held: "While a bank is presumed to know the signature of one of its depositors, and therefore can not recover from a bona fide holder for value money paid by the bank upon a check to which the drawer's signature was forged, the rule does not apply where the undisputed facts show that the holder of the check, by his negligence, contributed to the success of the fraud practiced on the bank, which was itself free from fault. *Swan-Edwards Co.* v. *Union Savings Bank,* 17 *Ga. App.* 572 (87 S. E. 825); *Woods* v. *Colony Bank,* 114 *Ga.* 683 (40 S. E. 720; 56 L. R. A. 929). Applying this well-recognized rule to the undisputed evidence, the verdict directed for the plaintiff was the only one that could have been legally rendered."

In *Third National Bank of Columbus* v. *Merchants & Mechanics Bank,* 28 *Ga. App.* 814 (113 S. E. 229), a drawee bank, upon which was drawn a check payable to "cash or order" with the maker's signature forged thereon, sought to recover the amount from the defendant bank, which had cashed the check for an indorser, and to which the plaintiff bank had paid the proceeds on its stamped indorsement. It was held that the petition set forth a cause of action as against a general demurrer. In the syllabus opinion, after quoting from *Woods* v. *Colony Bank,* supra, it was said: "The fault of the drawee which will prevent a recovery under such circumstances must be something more than mere constructive negligence arising solely from a failure to recognize the drawer's signature, unless the forgery be plain and palpable. It must consist of some sort of actual negligence. *Hutcheson Hardware Co.* v. *Planters Bank,* 26 *Ga. App.* 321 (105 S. E. 854); *Swan-Edwards Co.* v. *Union Savings Bank,* 17 *Ga. App.* 572 (87 S. E. 825); 5 R. C. L. 557. While a majority of the courts have not gone so far as to formulate any rule to the effect that the previous payment of a forged check by a bank other than the drawee bank, and its subse-

quent presentation to the latter for payment, amounts to such an absolute guaranty as would relieve the drawee bank from the exercise of any degree of care with reference to circumstances which should reasonably arouse suspicion as to the genuineness of the instrument, yet the principle above quoted has especial application where a check has been thus presented to the drawee bank by a holder bank in good standing, upon the theory that the drawee bank in such a case has the right to presume that the holder bank, in paying the check, has made due and proper inquiry concerning any attendant circumstances of suspicion, 5 R. C. L. 558. See also notes in L. R. A. 1915A, 78; Ann. Cas. 1912D, 496; 25 L. R. A. (N. S.) 49, 54." See *Farmers Bank* v. *Bank of Abbeville,* 29 *Ga. App.* 472 (116 S. E. 204) ; 9 C. J. S. 767, § 358; 12 A. L. R. 1091. In paragraph 8 of the petition in the instant case it was alleged, "that each defendant herein, except B. W. West, was guilty of gross negligence in cashing said checks as shown in exhibit B hereof in each instance, and that said defendants in each particular instance failed to exercise the slightest diligence in ascertaining whether or not such check, so cashed, was genuine and were negligent in failing to require proper and sufficient identification of the payee of such check in each instance." In paragraph 13 it was alleged "that your petitioner was without any fault of any kind whatsoever." Considered with the context this was sufficient, as against the general demurrer, to allege that the plaintiff was without fault. Under application of the foregoing principles, this was sufficient, as against the general demurrer, to allege negligence on behalf of the various indorsers, and, in connection with other allegations, to show such negligence contributing to the success of the forger's fraud upon the Cairo Banking Company as would give that institution, after refunding to West, a right of action against the alleged previous indorsers. In the circumstances such liability to the Cairo Banking Company would not exist merely in virtue of the statutory warranties imposed upon indorsers, but it would rest upon negligence in accepting the checks under suspicious circumstances without inquiry as to their genuineness, and indorsing them in a manner tending to mislead and cause the drawee bank to pay them without detecting the forgery, thus contributing to the successful result of the forgery.

■ The ruling announced in the third headnote does not require elaboration.

■ It is not alleged in the equitable petition as amended that the checks were in fact forgeries, but in paragraph 9 it is alleged that "if it should be determined that said checks are as a matter of fact forgeries, then petitioner alleges that the said defendant, B. W. West, was guilty of gross negligence," etc. In paragraph 12 it is alleged "that in the event that such checks may be determined in fact forgeries, that each and every defendant hereto, except B. W. West, is liable to your petitioner under the respective indorsements of each warranting the genuineness of each such check." In paragraph 13 it is alleged "that your petitioner was without any fault of any kind whatsoever." In paragraph 14 it is alleged "that petitioner has no adequate remedy at law, and that it brings this action to avoid a multiplicity of suits, and in order that the respective rights, liabilities, and duties of all parties hereto may be determined." The petitioner in this equitable suit, as defendant in the city-court action, could raise the issue as to forgery, which, if successful, would be the end of the controversy with West. But if unsuccessful, and the drawee bank should be required to pay West, the question as to its right would arise against previous indorsers whose negligence, if any, in failing to exercise due diligence as to the genuineness of the checks at the time of receiving them, and in indorsing them over to the next indorsee, contributed to the success of the forgeries by causing the drawee, Cairo Banking Company, to be misled and to pay the checks without detecting the forgeries. There were a number of checks that would involve separate suits on each one, in which the issue of forgery of the name of West and liability of the several indorsers to the Cairo Banking Company would be involved, not to mention the rights of the indorsers as between themselves. The Cairo Banking Company, as indicated above, having as against the general demurrer alleged a cause of action as against the indorsers, involving the same issues of forgery and questions of liability of the indorsers to the plaintiff, it was competent for the Cairo Banking Company to sue them all in one equitable action to avoid a multiplicity of actions. The judge erred in dismissing the action on general demurrer to the petition as amended.

*Judgment reversed. All the Justices concur, except Bell, J., disqualified.*

REID, Chief Justice, specially concurring. Feeling bound by the

678

holding in *Woods* v. *Colony Bank,* 114 *Ga.* 683 (supra), which, as I see it, requires the ruling made in the present case, I concur in the judgment, but I can not agree to the soundness of the rule as announced in the *Woods* case and as contained in the second division of the above opinion.