The CITIZENS AND SOUTHERN NA-
TIONAL BANK, Appellant,

v.

AMERICAN SURETY COMPANY OF
NEW YORK, Appellee.

No. 21429.

United States Court of Appeals
Fifth Circuit.

June 8, 1965.

Daniel B. Hodgson, Michael A. Doyle, Atlanta, Ga., for appellant, Alston, Miller & Gaines, Atlanta, Ga., of counsel.

J. Clifton Barlow, Jr., Hugh M. Dorsey, Jr., Atlanta, Ga., for appellee, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., of counsel.

Before WISDOM and GEWIN, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

This diversity case raises a small, slippery question of Georgia law concerning the relative rights of two banks, both hoodwinked by a forger who used an innocent depositor's checking account as a conduit for fraud. The district court awarded summary judgment to the plaintiff, American Surety Company, insurer of the bank that paid over the first forgery, shifting the loss to the defendant, Citizens and Southern National Bank, which paid over the second forgery. We affirm.

I

An unknown miscreant forged the signature of D. D. Dominey, president of Mortgage Investments, Inc. of Georgia, on a check drawn on the company account at the Fulton National Bank of Atlanta ("Fulton Bank"). The check, dated June 28, 1962, was payable to the account of Victor H. Higgins in the amount of $12,964.22. June 29, 1962, the forger deposited the check, endorsed "For deposit only to account of Victor H. Higgins", in Higgins's checking account at Citizens and Southern National Bank ("Citizens"). Citizens gave provisional credit to Higgins's account, stamped the check "Pay Any Bank P E G" (prior endorsements guaranteed), and presented it to the drawee Fulton Bank for collection. The same day, Fulton Bank paid the check, without objecting to the forgery of Dominey's signature; and the provisional credit firmed up and became final, subject to withdrawal by Higgins. July 5, 1962, the same forger (presumably) drew a second check. This one was for $12,900 on Higgins's account at Citizens. The check was imprinted with Higgins's name, address, and magnetized account number. Failing to notice the forgery, Citizens issued three cashier's checks for a total of $12,900, each made payable to "W. T. Nicholls", as requested by the presenter. These checks were presented to Citizens and paid the same day.

August 16, 1962, Fulton Bank made formal claim upon the plaintiff, American Surety Company, its bonding company, for $12,964.22, the amount of loss it sustained in cashing the first forged check. August 27, 1962, Higgins notified Citizens that his purported signature on the $12,900 check was a forgery, and demanded that Citizens give him $12,900 for delivery to Fulton Bank. September 5, 1962, Fulton Bank wrote Higgins making demand upon him for the payment of the funds Fulton Bank had paid on the first check. September 6, 1962, American Surety reimbursed to Fulton Bank the amount claimed, and in return received an assignment of all Fulton Bank's rights in connection with the loss. The next day, Higgins assigned to American Surety all his rights against Citizens.

March 27, 1963, American Surety, claiming as assignee of Higgins only,

brought this action against Citizens in the United States District Court for the Northern District of Georgia, for $12,900 plus interest. December 26, 1963, the plaintiff moved for leave to amend its complaint to include a claim under the assignment from Fulton Bank, alleging breach of Citizens's guaranty of prior endorsements on the first forged checks. Both parties moved for summary judgment. The district court, in a written opinion, held that American Surety could recover as assignee of Higgins, and granted the plaintiff's motion for a summary judgment.

## II

A. Basically, the plaintiff's position as assignee of Higgins and Fulton Bank is that the relationship between a bank and its depositor is that of debtor and creditor. Consequently, when a bank, here Citizens, pays a forged check drawn on a depositor, here Higgins, the payment is made with the bank's funds. Citizens therefore has no right to charge the amount of the forged check against the depositor's account or to withdraw any funds from his account in payment of the check.

B. Citizens contends that American Surety cannot recover on the assignment from Higgins, because Higgins has neither suffered any loss nor incurred any liability, and cannot recover on the assignment from Fulton Bank because of the doctrine of Price v. Neal, (K.B. 1762) 3 Burr. 1535, and Citizens's reliance on Fulton's mistake. In addition, Citizens contends that American Surety has forfeited its claims under both assignments by electing inconsistent remedies.

To support its position, Citizens analyzes the relevant transactions step by step, as follows: (1) Before Citizens presented the first forged check to Fulton Bank for payment, neither Citizens nor either of American Surety's assignors had incurred any liability. (2) The moment Fulton Bank mistakenly paid over the first forgery and the provisional credit to Higgins's account at Citizens firmed up, Citizens was obligated either to pay out the deposited funds to Higgins's order, or, on learning of the forgery, to make restitution "to the true owner, to-wit: The Fulton's depositor" (Mortgage Investments, Inc.); and Higgins, had he withdrawn the funds, would have been under the same obligation. (3) But when Citizens paid over the second forgery, all liability for restitution ended.

## III

A. The first step is obvious. The analysis flags at the second step. True, after the provisional credit firmed up, Citizens, unaware of the forgery, was obligated to pay out the deposited funds to Higgins's order; but restitution was due not only (if at all) to Fulton Bank's depositor, but also to Fulton Bank itself. It is the law of Georgia that a bank "cannot legally charge an amount paid on a forged check to the account of the depositor whose name was forged, but it must be considered as making the payment out of its own funds." White v. Georgia R. R. Bank & Trust Co., 1944, 71 Ga.App. 78, 30 S.E.2d 118, 120. Fulton Bank, having paid out the funds erroneously, was entitled to recover them in an action for money had and received, whether against Higgins, against Citizens, or against both, *so long as the funds were on deposit in Higgins's account at Citizens;* during that time, Citizens, being in possession of the funds, was liable to make restitution. Higgins too was liable, at least in the sense that he could withdraw the amount of the check only in favor of Fulton.

B. As we see it, the third step did not affect Fulton's right of recovery. Under Georgia law the funds remained in Higgins's account.

Citizens, however, argues that as soon as it paid the second forged check, both Citizens and Higgins were absolved of liability. It bases this argument on the doctrine of Price v. Neal, that a drawee who has paid on a bill bearing the forged signature of the drawer may not recover from a person who has received

payment in good faith and for value.[1] Citizens argues that its assumption of the obligation to pay the deposited funds to Higgins's order was consideration sufficient to bring the doctrine of Price v. Neal into play.

■ In the first place, even if Citizens's assumption of the obligation to pay Higgins did constitute consideration, so that the requirements of Price v. Neal are met, the doctrine is irrelevant to the question of Citizens's liability for restitution; that liability, by Citizens's own admission, existed after the time that the alleged consideration was given. In the second place, Citizens's argument again overlooks the rule in White v. Georgia R. R. Bank and Trust Co. that a bank paying over the forged signature of a drawer pays out its own funds. This time, the rule applies to Citizens. Payment of the second forged check did not diminish the amount on deposit in Higgins's account at Citizens. As a matter of banking bookkeeping, the proceeds of the first check are still in that account and may be removed by Citizens only for the purpose of making restitution to Fulton. If Citizens was liable in restitution before it cashed the second forged check, it was liable afterwards.[2]

■■ Citizens admits that the doctrine of Price v. Neal alone does not absolve it of liability, but argues that it is excused from the duty to make restitution because it paid the second check in reliance on the mistaken payment of the first by Fulton Bank. Had Fulton Bank not paid the first check, Citizens points out, there would not have been enough money in Higgins's account to cover the second, and Citizens would not have cashed it. Therefore, so the argument runs, Citizens relied on Fulton Bank's mistake in cashing the second check. This argument has surface appeal, but it disregards basic principles of banking operation. The safeguard on which a bank relies to avoid payment of a forged check is not the mere chance that the amount on deposit in the account on which the forged check is drawn will be insufficient, although an insufficiency, where it happens to exist, may in fact prevent mistaken payment; rather, a bank's protection against payment of forged checks is in the fact that it has its depositors' signatures on record. By the

1. The Negotiable Instruments Law which was in effect in Georgia when all the transactions relevant to this case occurred, does not in terms adopt the doctrine of Price v. Neal. The doctrine is said to have been "incorporated in the NIL under expansion of § 62 [Ga.Code Ann. 14–603, Repealed by Acts 1962, pp. 156, 427], which provides that acceptor engages to pay instruments and admits the existence of the drawer and the genuineness of his signature; * * * it may similarly be incorporated by inclusion in the law of merchants in NIL § 196 [Ga. Code Ann. 14–106, Repealed by Acts 1962, pp. 156, 427]". Comment, Allocation of Losses from Check Forgeries under the Law of Negotiable Instruments and the Uniform Commercial Code, 62 Yale L.J. 418, 420–1 n. 17 (1953). At any rate, the doctrine was applied in Georgia under the Negotiable Instruments Law, Cairo Banking Co. v. West, 1939, 187 Ga. 666, 2 S.E.2d 91, 121 A.L.R. 1048, though it was limited by Ga.Code Ann. 13–2044, Repealed by Acts 1962, pp. 156, 427, to situations in which the depositor had notified the drawee bank of the forgery within sixty days after the depositor had received the voucher representing the mistaken payment, or had been asked by the bank to call for his vouchers. (The duty of a depositor to discover and report to the payor bank an unauthorized signature is now covered in Georgia by section 4–406 of the Uniform Commercial Code (Ga.Code Ann. 109A–4–406).)

2. "The rule in Price v. Neal does not apply to a case *where the depository bank still has the money on deposit* to the credit of the depositor. In such a case the drawee bank on discovering, after it had paid the check bearing the forged signature of the drawer, may recover the amount so paid from the depositary bank to which the payment has been made. Where the depositary bank has not paid out the check to the depositor, the drawee bank may recover from the depositary bank the amount paid to it on such check." Whitney, The Law of Modern Commercial Practices 234 (1958).

very doctrine of Price v. Neal on which the defendant relies so heavily, banks are held, however harsh the rule, to know the signatures of their depositors. Granted, the sufficiency of Higgins's account in this case was no coincidence; it was a necessary and deliberate element of the fraud. But the fact that both forgeries were parts of the same scheme in the mind of the forger does not alter Citizens's right of reliance. It may be that by paying the first forged check Fulton Bank put Citizens in a·position to pay out the deposited funds with impunity *to Higgins's order*.[3] But Citizens was not entitled to rely on Fulton Bank's mistake by paying the funds to a forger, any more than it would have been entitled to pay over a forgery money mistakenly deposited to Higgins's account by another depositor. In short, the mistake by which the money got into Higgins's account is unimportant.[4]

---

3. Even payment to Higgins's order might not have released Citizens. It may be that Citizens, by taking the first check without recognizing that the indorsement of Higgins, its own depositor, had been forged, and by expressly guaranteeing prior indorsements, rendered itself liable to Fulton Bank on the forged indorsement, either on the guaranty or on a negligence theory. The law is unsettled as to the relative rights of the collecting and drawee banks in a case involving a bill bearing both the forged signature of the drawer and a forged indorsement. Clarke, Bailey, and Young, Bank Deposits and Collections, Uniform Commercial Code Practice Handbook, p. 134 (1963); Note, 2 Boston College Industrial and Commercial Law Review 384 (1961). There is some indication that before the adoption of the Negotiable Instruments Law (Ga.Code Ann. Title 14) by the Georgia legislature (Acts 1924, p. 163), the law of Georgia favored the drawee bank over a negligent bona fide purchaser. Hutcheson Hardware Co. v. Planters' State Bank, 1921, 26 Ga.App. 321, 105 S.E. 854. A case in which the negligent party was the collecting bank would seem to be a fortiori. The Negotiable Instruments Law does not deal specifically with the question of the right a drawee to recover from prior indorsees on an instrument mistakenly paid over a forged indorsement. (It is arguable that the warranties on presentment provided in

## IV

Finally, the defendant argues that American Surety has forfeited its claims under both assignments by electing inconsistent remedies—that is, by pleading both together. The defendant relies on a recent Georgia holding that a depositor who sues a forger to recover the proceeds of a forgery ratifies the bank's payment, and loses his right of action against the bank. Winn v. National Bank of Athens, 1964, 110 Ga. App. 133, 138 S.E.2d 89.[5] The claim under the assignment from Higgins, argues Citizens, is based on the theory that the deposited funds were Higgins's, and constitutes a ratification of the first forgery; and the claim under the assignment from Fulton Bank is based on the theory that Fulton Bank, having erroneously paid the first check over a forgery, paid out its own funds, and is entitled to recover. These allegedly in-

section 4–207(1) of the Uniform Commercial Code (Ga.Code Ann. 109A–4–207 (1)), which went into effect in Georgia January 1, 1964, would favor the drawee over the collecting bank where payment has been made on a forged check with a forged indorsement.)

4. Cf. Central National Bank of Richmond v. First & Merchants National Bank of Richmond, 1938, 171 Va. 289, 198 S.E. 883, also involving a double forgery (though there, unlike the present case, the accounts at both banks belonged to the same innocent depositor):

"Central, under a mistake, sent its money to First, there to be deposited to the credit of Moore. It was the duty of First so to keep the money, or to return it. If, instead of doing neither [sic], First, by its own error, paid the money out to a third party, who was not entitled to receive it, First is liable for a mistake for which Central was not responsible." 198 S.E. at 894.

5. See also Hardeman v. Ellis, 1926, 162 Ga. 664, 135 S.E. 195; Board of Education of Glynn County v. Day, 1907, 128 Ga. 156, 57 S.E. 359; Trust Company of Georgia v. S. & W. Cafeteria, 1958, 97 Ga.App. 268, 103 S.E.2d 63; Southern Federal Savings & Loan Association v. Firemen's Benevolent Association, 1945, 72 Ga.App. 663, 34 S.E.2d 674.

consistent remedies, Citizens asserts, defeat each other.

■■ The two theories are not necessarily inconsistent: As long as the money was on deposit in Higgins's account at Citizens, Surety was entitled to seek restitution against either Higgins or Citizens, though recovery against one would have precluded recovery against the other. The remedies, therefore, are mutually exclusive in the sense that they are alternative, but not in the sense that they are inconsistent. Under Georgia law, "[a] party is entitled to pursue any number of consistent and concurrent remedies." First National Bank of Atlanta v. American Surety Co., 1944, 71 Ga.App. 112, 30 S.E.2d 402, 407. Furthermore, even if the two theories were inconsistent, and could not, as a matter of Georgia law, be pleaded in the alternative, *both* would not be barred; and the plaintiff could recover, in our view, on either. But the short answer to the defendant's argument is that the Federal Rules of Civil Procedure do not require consistency of pleadings. Fed.R.Civ.P. 8(e) (2).

The judgment of the district court is affirmed.