**PAN AMERICAN AIRWAYS, INC. v.**
**CONTINENTAL NATIONAL BANK OF MIAMI et al.**
Case No. 82-1044 (24)
Eleventh Judicial Circuit, Dade County
January 18, 1983

Jacob Oliner, Norman I. Segal, for plaintiff.

Kendall B. Coffey, for defendant, Continental National Bank.

EDWARD S. KLEIN, Circuit Judge.

---

This Cause was heard on November 3, 1982 upon the motion of defendant, CONTINENTAL NATIONAL BANK OF MIAMI for summary judgment upon the claims asserted against by plaintiff, PAN AMERICAN WORLD AIRWAYS, INC. Based upon the pleadings, depositions, affidavits, memoranda and argument of counsel, the Court finds and holds as follows:

1. This action is brought upon the ten count Amended Complaint of plaintiff, PAN AMERICAN WORLD AIRWAYS, INC. ("PAN AM"), against defendants, EDUARDO RUBENSTEIN LERNER d/b/a ROADW. INT. WHOLS. and CONTINENTAL NATIONAL BANK OF MIAMI ("CONTINENTAL").

2. The four counts against CONTINENTAL include Count I for breach of warranty under Section 674.207(1) of the Florida Statutes; Count II for breach of warranty under Section 674.207(2), Fla. Stat. (1981); Count III for fraudulent representations as to warranties; and Count IX asserting breach of warranty under Section 674.207(1) and (2) against both Defendants.

3. The action arose from a series of transactions in which two travel agencies, Tri-City Travel and Mavis Travel purportedly issued miscellaneous charge orders ("MCO's") drawn on PAN AM in favor of RODW. INT. WHOLS. These items were placed for collection by RODEWAY for credit to its account with CONTINENTAL during a period beginning in January, 1981 and lasting through August of that year. CONTINENTAL presented each item for payment to PAN AM and, upon receipt of the proceeds, and released the funds to RODEWAY by crediting its accounts.

4. Both travel agencies had been cancelled before even the first of these MCO's were presented to PAN AM. Travel agencies like Tri-City and Mavis receive their validating plates and blank ticket stock from the Air Traffic conference, an association of which PAN AM is a member and which processes and polices the issuance of any payment for airline tickets and MCO's. On October 24, 1981, ATC had cancelled the agency of Tri-City for failure to remit proceeds for the tickets it had

issued. The ATC cancelled Mavis a few months subsequently for the same failure of payment.

5. Even though PAN AM had been notified of the cancellation of both agencies, it paid the MCO's upon presentment by CONTINENTAL.

6. From these facts and the theories urged in the pleadings, PAN AM claims that CONTINENTAL has breached warranties of presentment imposed upon CONTINENTAL pursuant to the Uniform Commercial Code, adopted in this State and found in Chapter 671 through 679 of the Florida Statutes. Further, by representing that the warranty obligations were, in fact, satisfied, CONTINENTAL purportedly committed a fraud. Based upon consideration of the pleadings, affidavits and the depositions in this action and the case law defining these warranties, the Court concludes that Plaintiff's claims must fail as a matter of law.

7. A primary basis for recovery urged by PAN AM is that CONTINENTAL breached its warranty of "good title" set forth under Section 674.207(1) of the Florida Statutes. Courts construing "good title" in this context of commercial paper have uniformly adopted a limited construction of its scope:

> The weight of authority among cases and comentators supports a specialized construction of the term "good title" as it is used in this context [Section 4-207], limiting its reference to the validity of a chain of necessary endorsements (citing cases) . . . [T]his limitation of the scope of the good title warranty is derived from the official comments to the U.C.C., the content given the good title concept under the uniform Negotiable Instruments Law (NIL) (the pre-UCC body of law governing negotiable instruments), and the structure of Code provisions distributing losses caused by forgeries in dishonest employees.

*Sun 'N Sand, Inc. v. United California Bank,* 21 Cal. 3d 671, 148 Cal. Rptr. 329, 582 P.2d 920, 930 (1978). This court agrees with the conclusion of courts throughout this country, that "good title simply means that the drafts bear no forged endorsements or signature." *Union Bank of Benton, Arkansas v. First National Bank in Mt. Pleasant, Texas,* 621 F.2d 790, 794 (5th Cir. 1980). *See also North Carolina National Bank v. Hammond,* 298 N.C. 703, 260 S.E.2d 617, 624 (1979); *Payroll Check Cashing v. New Palestine Bank,* 401 N.E.2d 752, 756 (Ind. Ct. App. 1980). *Federal Insurance Co. v. Groveland State Bank,* 37 N.Y.2d 252, 333 N.E.2d 344 (Ct. App. 1975).

8. In the present case, PAN AM does not maintain that anyone has forged the endosement of the payee, ROADWAY. In fact, the instruments

show no endorsement by ROADWAY. It is admitted by PAN AM that ROADWAY, the named payee, did indeed receive the proceeds of PAN AM's payment on the instruments. This Court therefore must conclude that because there is no allegation or evidence of a forged endorsement, there can be no breach of warranty of "good title."

9. PAN AM has also asserted a breach of Section 674.207(2) of the Florida Statutes. At the outset, the Court states its conclusion that this warranty does not exist in favor of payor such as PAN AM. An examination of the language of (1) and (2) of Section 674.207 reflects that while the latter warranty does run in favor of a "payor bank or other payor" the latter warranty exists only in favor of a "transferee." The manifest distinction in the useage of this language compels the conclusion that a payor is not a beneficiary of the subsection two warranties existing in favor of a transferee.

10. This distinction in language is consistent with over 200 years of jurisprudence sharply differentiating the warranties available to payors from those existing in favor of other transferees. Based on the doctrine of *Price v. Neal,* 3 Burr. 1345, 97 Eng. Rep. 871 (K.B. 1762) principles of risk of loss allocation require a payor, such as PAN AM, to know the genuineness, authenticity and authority of its own documents and signature. As a result, if the payor who is the drawer pays over a forged drawer signature, he cannot recover for a mistaken payment once the document has been accepted. *United States v. National Exchange Bank of Baltimore, Maryland,* 270 U.S. 527 (1926). This rule is contrasted with the circumstances of a forged endorsement in which the name of the payee rather than the original drawer is forged after the item is drawn. In the latter circumstances, the payor is not in the position to verify the endorser's signature, and, hence, is not in the better position to prevent a loss. The Court believes that this doctrine is fair and justly apportions the risk of loss in the cases of forgeries or unauthorized signatures. There is no reason why Florida should not join the universally accepted doctrine holding payors accountable to know their own documents and signatures. *National Metropolitan Bank v. United States,* 323 U.S. 454 (1945); *Sabatino v. Curtiss National Bank of Miami Springs,* 446 F.2d 1046 (5th Cir. 1971); *Citizens and Southern National Bank v. American Surety Company of New York,* 347 F.2d 18 (5th Cir. 1965); *Riggs National Bank of Washington D.C. v. Dade Federal Savings and Loan Association of Miami,* 268 F.2d 951 (5th Cir. 1959); "If the warranties of Section 4-207(2)(b) that all signatures are 'genuine or authorized' were to run to payors, the doctrine of *Price v. Neal* allowed in the Code would be obliterated. Further, the language "to its transferee and any subsequent collecting bank would not include a payor . . . ". *Payroll Check Cashing v. New Palestine Bank,* 401 N.E.2d 752, 756

(Ind. Ct. App. 1980); *Citizens Bank of Booneville v. National Bank of Commerce,* 334 F.2d 257, 258 (10th Cir. 1954) (applying Arkansas law); *Sun 'N Sand, Inc. v. United California Bank,* 21 Cal. 3d 671, 148 Cal. Rptr. 329, 582 P.2d 920, 928 (1978); *Sunshine v. Banker's Trust Company,* 34 N.Y.2d 404, 314 N.E.2d 860, 864 (1974); *North Carolina National Bank v. Hammond,* 298 N.C. 703, 260 S.E.2d 617, 623 (1979); *Fireman's Fund Insurance Company v. Security Pacific National Bank,* 85 Cal. App. 3d 797, 149 Cal. Rptr. 883, 892 (Ct. App. 1978). Several of the leading authorities on the Uniform Commercial Code also emphasize that, "the Code draftsmen quite clearly did not intend to word 'transferee' to include payor." *White and Summers,* UNIFORM COMMERCIAL CODE §15-5, at 599 (1979).

11. While the authorities all concur that the warranties under Section 607.204(2) are not available to a payor, this court nonetheless finds that those warranties would be satisfied as a matter of law in any event. Under Section 674.207(2), that warranty is satisfied so long as such signatures are genuine *or* authorized.

12. Finally, with respect to PAN AM's claim of fraud, the Court concludes that since the warranties statutorily imposed upon CONTINENTAL were not breached, any claim is eliminated that the adequacy of those warranties was fraudulently misrepresented.

Mindful of the Florida doctrine that summary judgment is to be sparingly granted, the Court has continued the hearing upon CONTINENTAL's motion for summary judgment on several occasions to allow PAN AM an opportunity to take discovery and otherwise to develop a basis for prosecuting further the fraud claim. Even with those opportunities, PAN AM has not established any basis to support a viable cause of action against CONTINENTAL in this matter. This is a clear case for summary judgment. "Where determination of the lawsuit depends upon a written instrument and the legal effect to be drawn therefrom, the question is essentially one of law and ordinarily would be determinable by entry of summary judgment by the trial judge." *Font v. Lazarus Homes Corp.,* 339 So.2d 258, 259 (Fla. 3d DCA 1976), *citing, Kochan v. American Fire and Casualty Company,* 200 So.2d 213, 220 (Fla. 2d DCA 1967). Thus, acknowledging that summary judgment should not be thwarted out "by raising of purely paper issues . . . " *Reflex, N.V. v. Umet Trust,* 336 So.2d 473, 475 (Fla. 3d DCA 1976), the Court concludes that summary judgment should be entered in favor of Defendant for the reasons set forth in this opinion, and based on such other grounds as are supported by the record. It is thereupon

ORDERED AND ADJUDGED that there is no genuine issue as to any material fact and that Defendant CONTINENTAL NATIONAL BANK OF MIAMI is entitled to judgment as a matter of law; it is further

ORDERED AND ADJUDGED that the Motion of Defendant CONTINENTAL NATIONAL BANK OF MIAMI for Summary Judgment be and the same hereby is granted; it is further

ORDERED AND ADJUDGED that the action is dismissed with prejudice as to this Defendant; it is further

ORDERED AND ADJUDGED the Court reserves jurisdiction to make any award for costs in favor of Defendant that may be appropriate.